MARY LOU SCIOLA *v.* ROBERT SHERNOW
(7850)

SPALLONE, FOTI and LAVERY, Js.

---

Argued April 17—decision released July 17, 1990

*Elizabeth A. Gallagher,* with whom were *Cynthia C. Bott* and, on the brief, *William F. Gallagher, Timothy C. Moynahan* and *Samuel Broque,* for the appellant (plaintiff).

*Wesley W. Horton,* with whom were *Robert M. Shields, Jr., James G. Williams* and, on the brief, *William R. Moller* and *Sherman M. Tonkonow,* for the appellee (defendant).

FOTI, J. The plaintiff in this medical malpractice and intentional assault case appeals from the trial court's order of remittitur of the jury's damage award and the court's denial of the plaintiff's motion for sanctions.

The jury could reasonably have found the following facts. The defendant had been the plaintiff's dentist for over ten years and had consistently advised her that nitrous oxide was the appropriate means of sedation for her during treatment. On April 19, 1984, the plaintiff visited the defendant's office to have a molar filled. Before beginning any dental work on the plaintiff, the defendant administered nitrous oxide to her. He did this without first checking to see if she was on any medication that would conflict with the nitrous oxide. He also administered a dangerously high concentration of the gas and kept her under its effects more than twice the usual length of time. In addition, the defendant had not checked the accuracy of the machine with which he administered the gas for at least three years.

When the nitrous oxide had been administered to the plaintiff in the past, she felt mildly dazed, but completely aware of her surroundings. When the nitrous oxide was administered on this occasion she heard a loud ringing noise, felt as if her head was flying up to the ceiling and then lost consciousness. During the course of the one hour and fifteen minutes she was under the effects of the gas she regained consciousness three times. On the first occasion she felt the defendant's tongue in her mouth and experienced pain in her breasts. When she attempted to resist the defendant she observed him turning up the concentration of nitrous oxide and again lost consciousness.

She awoke a second time to find the defendant on top of her. She was having difficulty breathing, the defendant's tongue was in her mouth and she was experiencing pain in her breasts. Once again she

attempted to resist the defendant and saw him turn up the gas. The painful ringing returned to her ears and she once again slipped into an unconscious state.

The third time the plaintiff regained consciousness, she kept her eyes closed so the defendant would not turn up the gas again. At this time, the defendant was still on top of her, and his tongue was in her mouth. She was frightened and felt violently ill. Once the defendant realized that she was awake he assisted her out of the chair. He then approached her from behind, grabbed her breasts and kissed her neck. She was aware that he had an erection at this time. She did not recall any dental work being performed during the entire course of this visit.

The plaintiff was disoriented when she left the defendant's office. She was nauseated and experienced a burning sensation in her nose, throat, palate and chest. She had a severe headache, her breasts were sore and she felt violated. After she was home, one side of her nose bled periodically.

Four days after the incident, the plaintiff visited her family physician. She was still suffering from headaches, her breasts were bruised and she was lethargic. The burning sensation in her throat and chest persisted and her nausea continued. She was referred to a pulmonary specialist who concluded that during her excessive exposure to nitrous oxide she had aspirated stomach acid into her lungs which left her with a permanent asthma condition and a permanent loss of 35 to 40 percent of her lung capacity.

The plaintiff also was seen by a psychiatrist who determined that she suffered from a posttrauma stress disorder. He further concluded that as a result of the events of April 19, 1984, she has a phobia of medical and dental personnel, and suffers from periodic sleeplessness, depression, fearfulness, and heightened anxi-

ety. In addition, her sense of self-reliance, her self-image and her ability to interact effectively with males has been impaired.

Before this incident, the plaintiff was the lead singer in her own six piece band and a professional entertainer. Since the incident, her income has been significantly reduced due to her diminished lung capacity and endurance.

After hearing the above evidence, the jury returned a plaintiff's verdict awarding her $300,000 in general damages and $100,000 in punitive damages. The defendant submitted interrogatories to the jury and it responded with the damages that it had assigned to each count. On a separate sheet of paper the jury indicated that it had found a plaintiff's verdict and a total damage award of $400,000.

Two days after the jury verdict was returned, the defendant filed a motion to set aside the verdict and requested an order of remittitur. The plaintiff filed a bill of costs at this time. Approximately six weeks later, the plaintiff filed a motion for sanctions because the defendant had failed to disclose and produce an excess liability insurance policy in the amount of $1,000,000.

The court held a hearing on these motions. It granted the motion to set aside the verdict and ordered a remittitur of $323,833.34, thus reducing the plaintiff's award to $76,166.66. The plaintiff's motion for sanctions was denied and costs of $15,074.67 were allowed. In its memorandum of decision, the trial court stated that the jury's award was "so large as to be ridiculous and must have resulted from either prejudice or mistake. Its amount offends the sense of justice and shocks the conscience." The court went on to explain that the verdict was "some sixteen times" its own estimate of the value of the case and concluded that the jury had "gone astray" because "[i]t is completely irrational to think

that a kiss and a touching of the breast could produce asthma and there was not a scintilla of evidence to support such a conclusion."

The court further concluded that the plaintiff's claim of diminished earning capacity was unjustified first because "there was no evidence whatsoever that her income had decreased," and second because after the incident she was able to earn a living by operating a travel agency and managing her own income producing property.

The court then sua sponte declared its own instructions to the jury to be "plain error." It then concluded that the jury was improperly compelled by a sense of outrage to punish the defendant with an erroneous and unjustified verdict.

The plaintiff has appealed the court's order of remittitur and its denial of her motion for sanctions.

I

The plaintiff first claims that the court abused its discretion in determining that the jury verdict of $400,000 was excessive and in ordering an 81 percent remittitur. We agree. Our discussion will first respond to the court's general statements in its memorandum of decision. We will then address the court's findings of plain error in its own charge to the jury.

When a trial judge disagrees with a jury's verdict we are faced with a vexing question and we are bound to review the judge's actions in setting aside the verdict rather than the actions of the jury in rendering it. *Wochek* v. *Foley*, 193 Conn. 582, 585, 477 A.2d 1015 (1984). Further, because the judge's actions involve the court's exercise of broad legal discretion, it will not be disturbed unless that discretion has been abused. Id.

We also recognized, however, that the plaintiff in this action had a constitutional right to have the issues raised in her complaint tried by a jury. Conn. Const., art. I, § 19; *Lo Sacco* v. *Young,* 20 Conn. App. 6, 19, 564 A.2d 610 (1989). When there is room for fair-minded persons to have a reasonable difference of opinion as to the amount to be awarded, this constitutional right dictates that the jury, rather than the court, pass upon the factual issue of damages. *Wochek* v. *Foley,* supra, 586. The evidence presented at trial must be viewed in a light most favorable to sustaining the jury's verdict; *Mather* v. *Griffin Hospital,* 207 Conn. 125, 139, 540 A.2d 666 (1988); and a jury's determination of damages should be set aside only when the verdict is clearly exorbitant and excessive; *Wochek* v. *Foley,* supra; or the size of the verdict is so shocking to a sense of justice that it leads us to the conclusion that the jury was influenced by prejudice, partiality, mistake or corruption. *Mather* v. *Griffin Hospital,* supra.

A

Although the court in the present case arbitrarily declared that the jury must have been directed by prejudice or mistake, this conclusion is not supported by the record before us. First, the trial court clearly invaded the province of the jury when it declared that the jury's award was sixteen times greater than its own estimate of the case and then reduced the award accordingly.

Second, the court ignored a substantial portion, if not all, of the medical evidence placed before the court by the plaintiff when it declared that a kiss and a touch on the breast could not produce asthma. Clearly the court had overlooked the testimony of both the plaintiff and her family physician as to the bruises on her breasts which indicated that the defendant had more than merely touched her. The court also overlooked the

testimony of the pulmonary specialist who attributed the plaintiff's permanent asthma condition and loss of lung function to the defendant's excessive use of nitrous oxide rather than to a kiss and a touch.

In addition, the court overlooked, or chose to ignore, the evidence submitted by the plaintiff indicating that her annual income from singing dropped from $18,000 before the incident to $2400 at the time of trial.

Finally, the court attempted to negate the permanent lung damage the plaintiff suffered by indicating that she had access to other income. It is possible, however, that the jury believed that she was nonetheless entitled to compensation for lost wages and impairment of her future earning capacity as a singer.

### B

The memorandum of decision also indicates that the court set aside the jury verdict when it found, sua sponte, that its supplemental charge to the jury was "plain error." Its finding specifically referred (1) to its instructions cautioning the jury not to "double up on damages," (2) to its failure to instruct the jury that the plaintiff had a duty to mitigate damages by making reasonable efforts to find alternate income, and (3) to its failure to instruct the jury that any award for diminished earning capacity is tax free.

The court explained in its charge that the jury would be bringing the plaintiff's complaint into its deliberations, and told the jurors that the complaint was written in two counts, one alleging assault and battery and one alleging medical malpractice. The court informed the jury that if it found the defendant liable on both counts, the plaintiff could receive only one amount for damages because her complaint alleged identical harm in both counts. The jury was also informed that they could add punitive damages to the award because these

were requested in the prayer for relief in the first count. The jury also brought interrogatories that were prepared by the defendant into its deliberations.[1]

After deliberations began, the jury sent a note to the court stating: "We require clarification on how to deter-

[1] The following interrogatories were supplied by the defendant, who apparently did not anticipate that the court would instruct the jury to find only one amount for damages. The jury's responses are also supplied here to show that the jury understood the court's instructions and followed them carefully.

"1. Did the defendant, Robert Shernow, D.D.S., injure the plaintiff by making unconsented sexual contact with her, as alleged in the First Count of the Complaint?

"ANSWER: Yes

"If your answer to the above interrogatory is 'no,' do not answer question number 2 and return a verdict in favor of Robert Shernow, D.D.S., on the the first count. If your answer to the above interrogatory is 'yes,' proceed to the next interrogatory, interrogatory number 2.

"2. What is the amount of damage proximately caused by the defendant's conduct as alleged in the First Count of the Complaint, if any?

"ANSWER: $400,000.00

"3. Did the Defendant, Robert Shernow, D.D.S., breach the standard of care in providing professional treatment to the [plaintiff], Mary Lou Sciola, as alleged in the Second Count of plaintiff's complaint? If your response to this interrogatory is "no" do not proceed to the following interrogatories and return a verdict in favor of the Defendant, Robert Shernow, D.D.S., on the second count of plaintiff's complaint. If your response to this interrogatory is in the affirmative, proceed to the next interrogatory.

"ANSWER: Yes

"4. Although we, the jury, find that Robert Shernow breached the standard of care in providing professional treatment to Mary Lou Sciola, we do/do not find that the Plaintiff, Mary Lou Sciola, suffered damage proximately caused by this breach of the applicable standard of care. If the answer to this interrogatory is in the negative, proceed no further. If the answer to this interrogatory is in the affirmative, proceed to the following interrogatory.

"ANSWER: Do

"5. What damages do you find the plaintiff suffered as alleged in Count Two of Plaintiff's Complaint?

"ANSWER: $300,000.00"

The jury returned a separate sheet of paper that stated "Verdict for the plaintiff" on which the foreperson wrote "$400,000" before he signed it and gave it to the court.

mine the two different types of monetary damage awards." The court reinstructed the jury as it had earlier and ended its instructions by asking if it had clarified the issue or confused the jurors further. After a brief exchange between the court and the jury, the jury foreman responded "I can't really come up with a question" and another juror stated "I think we can go back." It is the supplemental instructions that the court later, sua sponte, declared to be plain error.

An error must have two characteristics before it can be classified as "plain error." First, the error must be discernible from the face of a factually accurate record. *Cahill* v. *Board of Education*, 187 Conn. 94, 100–101, 444 A.2d 907 (1982). Second, the court's recognition of the error must be "in the interests of justice." Practice Book § 4185.

Although a trial judge may set aside a verdict for misstatements in his charge to the jury, this must be done with great caution, and only if he is entirely satisfied, upon an authoritative or statutory basis, that he has committed unmistakable error that has caused unquestionable harm. *Gaul* v. *Noiva*, 155 Conn. 218, 220, 230 A.2d 591 (1967); *Brunetto* v. *Royal Exchange Assurance Co.*, 126 Conn. 569, 572, 13 A.2d 138 (1940). It is difficult for a court to review its own charge with sufficient detachment from its own impressions received during the course of the trial and its own opinion of what result the jury should have reached. Id.

The complaint in this action was structured to lead the jury to the conclusions (1) that the unconsented sexual contact alleged in the first count was gained through the defendant's inappropriate and excessive use of nitrous oxide as alleged in the second count, and (2) that the plaintiff suffered one set of injuries from this one incident. Clearly, in response to this complaint, it was neither an injustice nor a matter of plain error for the

court to caution the jury that the plaintiff was not entitled to double damages. Further, our exhaustive search of cases and statutes has failed to reveal a definitive ruling upon which the court could have relied when declaring its instructions to be plain error. In the absence of prior precedent on this point of law, it was impossible for the court to have found an adequate basis for its conclusion that it had committed unmistakable error that resulted in unquestionable harm.

The court's second and third assignments of plain error in its memorandum of decision can be disposed of quickly. The court's assignment of error to its failure to instruct the jury as to the plaintiff's duty to mitigate damages is without merit. Our review of the transcipt indicates that the court did, in fact, instruct the jury on this point of law.[2] Likewise, the court's ruling that it should have instructed the jury that any award to the plaintiff would be tax free was also faulty. Our Supreme Court has held that " 'whether the plaintiff has to pay a tax on the award is a matter that con-

---

[2] The court charged the jury as follows: "In considering—If you get beyond liability, if you get beyond causation, and you decide that, in fact, she was harmed, one of the things you have to take into consideration is that a person in her situation is under a duty of what we call minimizing damages. Now, for instance, one of her claims has to do with interference with her capacity to earn a living and so forth and so on. I think it's quite clear that she has demonstrated from her testimony that she's capable of earning a living in many different fields, she's been a bookkeeper, she's been a deli manager, she's been a purchasing agent, she's been a travel agent, she's been a singer and so forth and so on and having those various abilities, even if she was harmed by some act of the doctor which is actionable, you have to consider whether or not she could compensate for any impairment to carry on her singing career in other ways. I don't recall any testimony which indicated that she was given advice as to medical treatment which might alleviate her condition which she refused to go along with. And if I'm right on that, why, you simply ignore that question. If, on the other hand, you do recall that there was such, a person isn't under an obligation to follow the advice of a doctor. You make that—You're entitled to make a reasonable decision as to whether or not that's an acceptable course of conduct or not."

cerns only the plaintiff and the government' "; *Gorham* v. *Farmington Motor Inn,* 159 Conn. 576, 581, 271 A.2d 94 (1970); and to instruct the jury as to the plaintiff's tax liability would only cause more problems than it would solve. Id.

We conclude that, contrary to its own opinion, the trial court did not commit plain error in its instructions to the jury.

## II

The plaintiff next claims that the trial court should not have denied her motion for sanctions. The plaintiff's motion was based upon the defendant's failure to disclose a $1,000,000 excess liability insurance policy until fifteen days after the jury had returned its verdict.

The plaintiff acknowledges in her brief that the decision to impose sanctions rests within the broad discretion of the trial court and that decision will not be overturned unless the court has abused its discretion. See Practice Book § 231; and *Corosa Realty* v. *Covenant Ins. Co.,* 16 Conn. App. 684, 689, 548 A.2d 473 (1988). The ultimate issue in determining whether that discretion has been abused is whether the court could have concluded as it did. *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 108, 476 A.2d 1074 (1984).

Our review of the record leads us to conclude that the court did not abuse its discretion in denying the plaintiff's motion for sanctions.

The judgment is reversed and the case is remanded with direction to render judgment on the verdict returned by the jury.

In this opinion the other judges concurred.