EUGENIA SAPOROSO ET AL. *v.* AETNA LIFE AND
CASUALTY COMPANY ET AL.
(14164)

SHEA, CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued November 1, 1991—decision released March 3, 1992

*Lawrence J. Cicchiello,* with whom, on the brief, were *Michael J. Melly* and *Angelo Cicchiello,* for the appellants (plaintiffs).

*Albert Zakarian,* with whom, on the brief, was *Steven M. Greenspan,* for the appellees (defendants).

SHEA, J. The complaint in this action, as amended at the commencement of trial,[1] alleged claims for the intentional infliction of emotional distress and for breach of contract arising out of the termination of the employment of the plaintiff, Eugenia Saporoso,[2] by the defendants Aetna Life and Casualty Company (Aetna) and its supervisory employee, Laura Larese. After a trial of several weeks, the court directed the jury to return a verdict for the defendants on these remaining counts[3] of the complaint. The plaintiff has appealed from the judgment, claiming there was sufficient evidence to warrant the submission of the case to the jury. The issues raised in the appeal are: (1) whether the failure of the plaintiff to file a motion to set aside the directed verdict precludes review of her claims on appeal; (2) whether the denial of the plaintiff's motion to amend the complaint after trial had commenced was erroneous; (3) whether the claim of intentional infliction of emotional distress was barred by her recovery of workers' compensation benefits for the same injury; and (4) whether she suffered any damages from the termination of her employment. We affirm the judgment.

Under the view of the evidence most favorable to the plaintiff; *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 163, 464 A.2d 18 (1983); the jury might reasonably have found the following facts. The plaintiff was first employed by Aetna in 1966, and she continued her employment until 1974, when she ceased working

[1] The effective complaint when the trial began on July 17, 1990, was the amended complaint dated November 8, 1988.

[2] For convenience, we refer only to the plaintiff Eugenia Saporoso throughout this opinion. Her husband, Carmine Saporoso, is also a plaintiff, claiming a loss of consortium in five counts that are derivative of the five counts setting forth his wife's claims of injury.

[3] The plaintiff withdrew two statutory counts before trial. Those counts claimed violations of General Statutes § 31-290a (discrimination against employee for asserting right to workers' compensation) and § 42-110b (unfair trade practices).

in order to give birth to a child. In September, 1982, she once again became employed by Aetna in its employee benefits claim department. She applied in 1984 for a position in the NSF collection department, of which the defendant Larese was supervisor. The plaintiff received satisfactory performance evaluations until the end of January, 1985, when her relationship with Larese began to deteriorate. Larese became unduly critical of the plaintiff's job performance, required her to work through lunch periods and accused her of misperforming tasks assigned to others.

On February 25, 1985, Larese issued a written warning to the plaintiff concerning her work. Believing she was being treated unfairly by Larese and suffering from job related stress, the plaintiff went to Aetna's human resources department to discuss her situation. As suggested by a person in that department, she went to the infirmary concerning her complaints of nervousness, headaches, shakiness and stomach problems. A nurse in the infirmary advised her to leave work and to go home, which she did after receiving permission.

The plaintiff consulted her family physician on March 6, 1985. He advised her to rest and to avoid talking because her nervous condition caused her to lose her voice. The plaintiff remained out of work on March 7, but received a call from Larese asking her to return to work. On March 11, when she returned to work, she was sent home, after an examination at the company infirmary, because of the loss of her voice, nose bleeds and a choking sensation. She was examined on March 20 by her family physician, who certified that she was unable to work during the period March 6 through April 1, 1985. After another examination on April 3, her doctor certified that she should not return to work until June 7 because of a swollen throat, headaches, insomnia, and an upset stomach. During the period the plaintiff was out of work, Larese

made frequent inquiries by telephone and letter concerning her failure to return to work and her medical treatment, sometimes accusing her of malingering.

On May 23, 1985, at Larese's insistence, the plaintiff was examined by an orthopedist selected by Aetna, despite the plaintiff's protestations that her complaints were not orthopedic in nature. This physician found no orthopedic problems, but referred the plaintiff to an ear, nose and throat specialist, who examined her on May 31 and advised her to stay out of work from that date until June 18. Nevertheless, Larese, on the basis of the orthopedist's report, telephoned the plaintiff on June 3 and instructed her to come to work on June 5. The plaintiff explained that she was incapable of returning on that date and, because she had begun to choke, she could not complete the conversation. Larese then sent a letter to the plaintiff stating that, if she failed to return to work by June 5, her employment would be terminated. When the plaintiff failed to report for work on June 5, another letter was sent notifying her that Aetna had terminated her employment.

Thereafter, the plaintiff's condition worsened and she consulted a psychiatrist. She lost weight, experienced dizziness and could neither drive a car nor care for her family. She suffered headaches, stomach upsets, decreased energy levels and crying episodes. The psychiatrist attributed her physical problems to anxiety and depression related to her employment and her discharge. He found that she was totally disabled from her employment.

On July 9, 1985, the plaintiff filed a claim for workers' compensation benefits pursuant to General Statutes § 31-310. The workers' compensation commissioner, after a formal hearing, found that the plaintiff had become totally disabled as a result of her employment

and awarded her total disability benefits from March 6, 1985, until such time as her disability was cured or diminished.

## I

After the jury, as directed by the court, had returned a verdict for the defendants, the plaintiff filed this appeal without having first moved to set aside the directed verdict. "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action . . . ." General Statutes § 52-228b;[4] see Practice Book § 320.[5] In *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515, 441 A.2d 163 (1981), we held that the statute required a motion to set aside a verdict not only when the claim on appeal related to the sufficiency of the evidence to support the verdict, but also when an erroneous ruling of the trial court was a basis for the appeal. We have applied the statute and the rule to directed verdicts as well as to those rendered by a jury without the

[4] General Statutes § 52-228b provides: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

[5] Practice Book § 320 provides: "Motions in arrest of judgment, whether for extrinsic causes or causes apparent on the record, motions to set aside a verdict and motions for new trials, unless brought by petition served on the adverse party or parties, must be filed with the clerk within five days after the day the verdict is accepted or judgment rendered, exclusive of such days as the clerk's office is not open; provided that for good cause the court may extend this time. The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies."

order of a court. *Dunham* v. *Dunham,* 204 Conn. 303, 310–11, 528 A.2d 1123 (1987); *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 249–50, 520 A.2d 1008 (1987); see *Pagani* v. *BT II, Limited Partnership,* 24 Conn. App. 739, 750, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991).

In contending that "[t]here simply is no language in the statute requiring the motion [to set aside a verdict] as a predicate to full appellate review of rulings made by the court during the trial of the case," the concurring opinion overlooks the breadth of the first sentence of the statute, which provides that "*[n]o* verdict in any civil action . . . may be set aside except on written motion . . . ." (Emphasis added.) There is no ambiguity in that language to justify a distinction between motions to set aside for insufficient evidence and those based on rulings during the course of the trial. In applying a statute this court is bound by its terms and cannot read into its plain language exceptions that the legislature has not created.

Although § 52-228b is a procedural statute that this court has constitutional authority to reject; *State* v. *Clemente,* 166 Conn. 501, 507, 353 A.2d 723 (1974); *Adams* v. *Rubinow,* 157 Conn. 150, 156, 251 A.2d 49 (1968); we implicitly consented to its terms in *Pietrorazio* v. *Santopietro,* supra, 514. The concurring opinion does not propose that we exercise our authority to invalidate the statute as a trespass upon our jurisdiction over procedural rules but would achieve a similar result by establishing an exception wholly unsupported by the statutory text.

Despite the views of some commentators, none of whom have considered the effect of the statute, that a motion to set aside based on rulings at trial is redundant and "add[s] nothing to the appeal"; 2 E. Stephenson, Connecticut Civil Procedure (2d Ed.) § 205 (d);

F. James & G. Hazard, Civil Procedure (2d Ed.) § 7.17; such a motion serves at least four useful functions: (1) it allows the trial court, in the less hectic atmosphere of a posttrial proceeding, to reconsider its rulings and, if they are determined to have been erroneous as well as harmful, to grant a new trial without the necessity of an appeal; (2) it provides an opportunity for the court to explain and to justify the challenged rulings in a written memorandum far more effectively and clearly than is possible at trial; (3) after a verdict is rendered and before an appeal is taken it provides the only occasion for counsel to appear in court and to present arguments in support of their positions, which are ordinarily formulated much more clearly and persuasively than at trial; and (4) it induces counsel for the parties to reevaluate the strength of their positions in the light of a jury verdict and thus may lead to a settlement of the litigation.

The plaintiff recognizes the consequences of her failure to move to set aside the verdict and concedes that plain error is the appropriate standard of review. "The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court." Practice Book § 4185. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). We conclude that none of the plaintiff's claims of error satisfies that standard of review.

## II

The plaintiff claims that the trial court incorrectly relied on her November 11, 1988 amended complaint in directing a verdict for the defendants rather than

her proffered July 16, 1990 amended complaint,[6] which she claims had superseded the earlier complaint by virtue of Practice Book § 176.[7] The rule of practice provides that, after a request to amend a complaint has been filed with the proposed amendment appended, "the amendment shall be deemed to have been filed by consent of the adverse party" unless an objection "has been filed . . . within fifteen days from the date of the filing of said request . . . ." Practice Book § 176 (c). The record, however, is unclear as to when the plaintiff's request was filed, because the docket

[6] The proposed amendment would have added numerous additional paragraphs to each count of the November 11, 1988 complaint, expanding the first count from thirteen to thirty-eight paragraphs with corresponding increases in the other counts, which incorporated the new paragraphs by reference. The plaintiff contends that these additional allegations were necessary to include the effect of the termination of her employment as an additional basis for her claim of extreme emotional distress.

[7] Practice Book § 176 provides: "Except as provided in Sec. 182, a party may amend his pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(a) By order of court; or

"(b) By written consent of the adverse party; or

"(c) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party as provided by Sec. 120, and with proof of service endorsed thereon. If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall, after service upon each party as provided by Sec. 120 and with proof of service endorsed thereon, be filed with the clerk within the time specified above and placed upon the next short calendar list.

"The court may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial. If the amendment occasions delay in the trial or inconvenience to the other party, the court may award costs in its discretion in his favor. For the purposes of this rule, a substituted pleading shall be considered an amendment. (See Gen. Stat., § 52-130 and annotations.)"

entry indicates a filing date of August 10, 1990, the day the verdict was rendered. The transcript indicates that the trial court was aware of this request on July 17, 1990, before the trial began, but chose to defer action thereon until later. There is another reference to the plaintiff's motion to amend her complaint in the transcript of August 2, 1990, as a subject of future discussion with the court. Although no explicit ruling on the plaintiff's request to amend has been called to our attention, during the argument of the defendants' motion for a directed verdict the plaintiff indicated that the court had denied her motion to amend.

At trial, the plaintiff never raised the claim she advances on appeal, that the July 16, 1990 amendment had superseded the November 11, 1988 complaint by virtue of § 176. If such a claim had been seasonably raised, the court might well have exercised its discretion to deny the claim in view of the likelihood that the amendment would result in a delay in the middle of the trial to provide the defendants with an opportunity to prepare a defense to the new allegations. From the record, it is evident that the plaintiff submitted her proposed amendment to the court for a ruling thereon rather than rely on the automatic amendment provision of § 176. Having done so and having acknowledged the court's denial of the amendment, the plaintiff cannot now be permitted to raise as plain error the possible effect of § 176 with respect to a request to amend filed at the start of trial.

### III

In directing a verdict for the defendants with respect to the plaintiff's claim of intentional infliction of extreme emotional distress, the trial court concluded that the award of workers' compensation to the plaintiff for total disability from March 6, 1985, "until Claimant's disability is cured or diminished" precluded any

recovery on such a claim because of the principle of collateral estoppel. The court held that the award established as a matter of law that the plaintiff's emotional distress had arisen "out of and in the course of [her] employment" and that, therefore, workers' compensation was the exclusive remedy for this work related injury. General Statutes §§ 31-284 (a), 31-293a; see *Nolan* v. *Borkowski*, 206 Conn. 495, 500–501, 538 A.2d 1031 (1988).

The plaintiff claims that the court's ruling constituted plain error because the finding of the workers' compensation commissioner does not consider whether the defendants intended to inflict emotional distress upon her in terminating her employment. The allegations of the second count of the November 8, 1988 complaint, however, upon which the court was entitled to rely in deciding the motion for a directed verdict, alleged that all of the specific wrongful acts of the defendants that provided the factual basis for the infliction of emotional distress claim had occurred during the months of January, 1985, through March, 1985. This count of the complaint plainly relates only to the period of the plaintiff's employment because she was not discharged until June 5, 1985. The proposed amendment to the complaint, which we have held in part II of this opinion was properly denied, would have expanded the allegations of the second count to include wrongful acts occurring after March, 1985, that related to the termination of the plaintiff's employment. Without the proposed amendment, the complaint alleged the infliction of emotional distress by acts of the defendants clearly related to the plaintiff's employment, which occurred only during the period of her employment.

The plaintiff concedes that the emotional distress she suffered from the defendants' acts during the period of her employment was the subject of the workers' compensation award she has received. This award was

necessarily predicated on the conclusion of the commissioner that her injury had arisen out of and in the course of her employment. General Statutes § 31-284 (a).[8] The trial court, therefore, properly held that the principle of collateral estoppel precluded a redetermination of that issue by the jury. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the same parties, whether on the same or a different claim." 1 Restatement (Second), Judgments § 27; see *Scott* v. *Scott,* 190 Conn. 784, 787, 462 A.2d 1054 (1983). The award followed a formal hearing at which liability of the employer was contested and the commissioner expressly found "no evidence to contradict Claimant's alleged disability and its relation to her work."[9] Since the only claim of infliction of emotional distress in the complaint related solely to the plaintiff's employment and she had received a workers' compensation award for that injury, the preclusive effect of collateral estoppel clearly barred relitigation of the issue of whether her injury was causally related to her employment. Her claim as pleaded in the second count, therefore, could

[8] General Statutes § 31-284 (a) provides: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

[9] The workers' compensation commissioner found that Aetna had "*unreasonably contested liability*" and had "unduly delayed payments of compensation." (Emphasis added.)

not be maintained in the face of the provision of § 31-284 (a) prohibiting "any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment."[10]

The plaintiff also urges us to follow the decisions of courts in some other jurisdictions that have allowed workers whose injuries have resulted from intentional wrongful conduct of their employers to pursue a common law action in addition to the remedy of workers' compensation. This court has held that "[a]n intentional tort committed upon one employee by another, which causes personal injury arising out of and in the course of his employment, is covered by the compensatory provisions of the [Workers'] Compensation Act." *Jett* v. *Dunlap,* 179 Conn. 215, 218, 425 A.2d 1263 (1979). "In Connecticut the exclusive remedy for an employee injured in the course of employment is provided by the Workers' Compensation Act . . . ." *Nolan* v. *Borkowski,* supra, 500. In reviewing an appeal for plain error, we are not inclined to reconsider our precedent. "It was clearly not plain error for the court to adhere to established precedent." *Atlantic Richfield Co.* v. *Canaan Oil Co.,* supra, 252.

---

[10] General Statutes § 31-284 (a) protects only the employer against civil actions for damages when workers' compensation is an available remedy. Similar protection is afforded to a fellow employee, such as the defendant Larese, when workers' compensation is available, by General Statutes § 31-293a, which provides in part: "If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1." This defendant, however, would not have had the benefit of the doctrine of collateral estoppel, on which the court relied in directing the verdict, because she was not a party to the workers' compensation proceeding. The plaintiff, however, has asserted on appeal no claim against the defendant Larese seeking to impose liability on her apart from Aetna.

## IV

In directing a verdict on the plaintiff's claim of breach of contract by virtue of the termination of her employment on June 5, 1985, while she was on sick leave, the trial court concluded that, even if the termination had constituted a breach, the plaintiff had proved no recoverable damages. The court calculated that, if the plaintiff had remained on sick leave for the maximum period of twenty-six months, as provided under her employer's sick leave plan, and had received all other benefits available to an employee terminated for disability, she would have been entitled to the sum of $23,107.73. Her workers' compensation payments since her discharge, however, totalled $63,132.75 in addition to the medical expenses paid by her employer. It is undisputed that the sick leave plan provides that workers' compensation payments are to be deducted from the amount of sick pay to which an employee would be entitled. Accordingly, the court concluded that judgment for Aetna on the contract claim was required as a matter of law.

The plaintiff maintains that the trial court's conclusion was plain error for two related reasons: (1) if she had been able to return to work within the period of allowable sick leave, her earnings together with other benefits that would have accrued during her remaining years of employment would have exceeded by far her workers' compensation benefits; and (2) the proximate cause of the plaintiff's continuing disability was the wrongful termination of her employment while she was on sick leave, and damages for such disability as measured by her probable future earnings less her workers' compensation benefits were recoverable for this breach of contract.

We do not disagree with the plaintiff's claim that there was sufficient evidence for the jury to have found that the disability that prevented her from returning to work was caused by her termination while on sick leave and that, if she had resumed her employment, her earnings and other benefits would have been greater than her workers' compensation payments. We agree with the trial court, nevertheless, that any damages resulting from the plaintiff's disability, even if proximately caused by her termination, are not within the scope of damages recoverable for breach of contract. "Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made." 3 Restatement (Second), Contracts § 351 (1); see *West Haven Sound Development Corporation* v. *West Haven,* 201 Conn. 305, 319–20, 514 A.2d 734 (1986). There is no reasonable basis in the evidence for a jury to have found that in 1982, when the plaintiff resumed her employment with Aetna, it was reasonably foreseeable that, if the plaintiff's employment should be terminated, with or without cause, she would suffer a continuing disability from a psychiatric disorder related to her employment or the circumstances of her discharge. We conclude that there was no plain error in the trial court's direction of a verdict on the plaintiff's breach of contract claim.

The judgment is affirmed.

In this opinion, CALLAHAN and GLASS, Js., concurred.

BERDON, J., with whom BORDEN, J., joins, concurring. I concur with the majority only because the plaintiff agrees that as a result of her failure to file a motion to set aside the verdict, this court is "limited to a plain error standard of review." Nevertheless, I write separately because of my concern over the procedural

straitjacket the majority adopts that deprives a litigant of a meaningful appellate review.

We have recognized that "[u]nder our practice it has long been thought essential to move to set aside a verdict in order to obtain appellate review of a claim that the evidence was insufficient to support the verdict. . . . A compelling reason for this view is the great weight accorded on appeal to the action of the trial court upon the motion." (Citations omitted.) *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 513–14, 441 A.2d 163 (1981). I agree with this rule because it affords the trial court the opportunity to address an error that occurred at trial that it had not addressed previously. Therefore, if a verdict is not supported by the evidence or if it should be set aside for some other reason on which the trial court has not ruled (such as either being excessive or inadequate), the trial court should be given the opportunity to review it in the first instance. Furthermore, on appeal, we should have the benefit of the trial judge's opinion in those instances.

The legislature recognized this need when it enacted General Statutes § 52-228b[1] in 1965. Although § 52-228b broadly states that the verdict may not be set aside without such a motion, it must be read in the context of the existing common law; *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 573, 522 A.2d 763 (1987); and common sense. *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 636–37, 513 A.2d 52 (1986); *Kron* v. *Thelen,* 178 Conn. 189, 192, 423 A.2d 857 (1979). The legislature's intent to require the motion only for limited purposes is made clear in the statutory language that requires that the parties have the opportunity to accept additurs and remittiturs, matters solely

[1] See footnote 4 of the majority opinion for the text of General Statutes § 52-228b. The majority also seems to rely on Practice Book § 320, but § 320 merely provides for the time in which the motion must be filed. See footnote 5 of the majority opinion for the text of § 320.

for the trial court, before the court may set aside a monetary verdict on the basis of inadequacy or excessiveness.[2]

In 1981, this court in *Pietrorazio* v. *Santopietro*, supra, unnecessarily extended the requirement that the appellant must file a motion to set aside the verdict with the trial court in order to obtain full appellate review. The court required such a motion for all trial court rulings assigned as error in a jury case. Although the court based this conclusion on a reading of § 52-228b, the clear language of the statute does not require such a construction. There simply is no language in the statute requiring the motion as a predicate to full appellate review of rulings made by the court during the trial of the case.

The requirement for appellate review on which this court in *Pietrorazio* layered is redundant. Such a requirement "would add nothing to the appeal." 2 E. Stephenson, Connecticut Civil Procedure (2d Ed.) § 205 (d); F. James & G. Hazard, Civil Procedure (2d Ed.) § 7.17. Moreover, a party's failure to file a motion to set aside a verdict is unlike the failure to object on the offering of evidence or to take an exception to a charge because those errors, when brought to the attention of the trial court, can be corrected. Here, the trial court had already ruled on the claims and the jury had been discharged; it is too late after the verdict to correct the error and save the trial.

Such unnecessary rules have a way of taking on a life of their own. For example, just last year, the court in *Dunham* v. *Dunham*, 217 Conn. 24, 29, 584 A.2d 445 (1991), applied this rule to a nonjury case and, as a result, would only consider the plaintiff's claims of error

---

[2] The legislative history indicates that the sole purpose of the statute was to allow the trial court to order an additur and, if not accepted, to set the verdict aside. 11 S. Proc., Pt. 2, 1965 Sess., p. 589.

under the restrictive review of "plain error." Commentators have written the following about *Dunham:* "This decision is totally wrong. Section 320 [of the Practice Book[3]] is in a chapter pertaining to jury trials and *Dunham* is not a jury case. The whole purpose of requiring a § 320 motion as a pre-requisite to full appellate review is to give the reviewing court the benefit of the trial judge's views after someone else (i.e., the jury) has decided the case. That rationale is obviously inapplicable here. *Dunham* has vast potential for mischief. Does it mean that every time a judge decides a non-jury case, the losing party has to file a motion under either § 320 . . . in order to obtain full appellate review? That would be unthinkable." 1 W. Moller & W. Horton, Connecticut Practice Book Annotated (1992) § 320.

*Dunham* was preceded by the court's extension of the rule to directed verdicts. *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 249–50, 520 A.2d 1008 (1987). In other words, an appellant, in order to obtain a meaningful review of his or her claim of error, must first file and argue before the trial court a motion to set aside the verdict that it directed. This requirement becomes even more difficult to understand when we have repeatedly held that directed verdicts are not favored. *Boehm* v. *Kish,* 201 Conn. 385, 394, 517 A.2d 624 (1986). We must assume that trial courts do not take the motions for a directed verdict lightly and will grant them only after careful consideration.

The unreasonableness of requiring the appellant to have filed a motion to set aside a directed verdict, in order to obtain full appellate review of that action by the trial court, is clearly demonstrated in this case. Not only was it impossible to correct the error through the motion because the jury had been discharged, but, in this case, the trial court gave careful consideration to

---

[3] See footnote 1, supra.

the issues in its decision on directing the verdict. Before directing the verdict, the trial court recessed the trial, both sides presented extensive briefs on the same issues presented in this appeal and there was extensive oral argument. It makes little sense to require a motion to set aside the verdict and require the same argument all over again. This is tantamount to requiring the litigant to say—"Judge, did you really mean it?" And even if the trial court reconsidered its decision, it would have been of no use because the jury had been discharged.

Since the plaintiff herself conceded in this case that plain error is the appropriate standard of review, and since that was therefore the posture in which the case was presented to us, I concur in the result.