[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE VERDICT
In this medical malpractice case, the plaintiff sought to recover damages against the defendants who are obstetricians for,inter alia, the deaths of their twin babies during gestation. The plaintiffs alleged that the defendants were negligent: (1) in failing to diagnose a monochorionic, monoamniotic twin gestation; (2) in failing to diagnose cord entanglement; (3) in negligently monitoring and supervising the plaintiff mother's pregnancy given the risks associated with the condition; and (4) in failing properly to treat and care for her condition and complications.
After trial to a jury, a verdict was rendered in favor of the defendants. The plaintiff now moves to set aside the verdict as "against the evidence", assigns error in the court's failure to charge the jury as requested, and in certain of the court's evidentiary rulings.
The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict. American National Fire Insurance Co. v. Schuss,221 Conn. 768, 774, 607 A.2d 418 (1992). Ultimately, "[t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . ." Palomba v. Gray, 208 Conn. 21, 23-24,453 A.2d 1331 (1988). Limiting that discretion, however, is the litigants' "constitutional right to have issues of fact determined by a jury" where "there is room for a reasonable difference of opinion CT Page 135 among fair minded jurors". Id. 25.
The issue in this case was whether the pregnancy of Aili DiBonaventura was diamniotic (two sacs, a separate one for each twin) or monoamniotic (one sac with both fetuses in the same sac). The plaintiff offered evidence through expert medical witnesses that the pregnancy was monoamniotic and should have been diagnosed as such from the early stages of gestation. Because there was only a single sac, the babies' umbilical cords became severely entangled, causing their deaths. This could have been avoided, claims the plaintiff, had the defendants recognized the condition in a timely fashion and addressed it.
The defendants' medical experts testified that there were two sacs present from the beginning, and only in the last stages of the pregnancy did the dividing membrane between the two sacs rupture, allowing for the entanglement of the cords and creating the impression of a monoamniotic gestation.
On these two points of medical views there was a multitude of evidence and extensive explanation of the divergent opinions. Having heard this evidence, the court is of the opinion that there was sufficient evidence upon which the jury could have based its verdict. American National Fire Ins. Co. v. Schuss, supra, 221 Conn. 768.[1]
As further grounds for the plaintiff's motion to set aside the verdict, it is claimed that the court erroneously refused to charge as requested on (1) impeachment, (2) the doctrine of admissions, (3) the standard of care as it relates to misdiagnosis, and (4) loss of filial consortium.
A motion to set aside the verdict "allows the trial court, in the less hectic atmosphere of a post-trial proceeding, to reconsider its rulings and if they are determined to have been erroneous as well as harmful, to grant a new trial without the necessity of an appeal, . . ." Sapporoso v. Aetna Life andCasualty Co., 221 Conn. 356, 363, 703 A.2d 1160 (1992). "Although a trial judge may set aside a verdict for mistakes made in the charge to the jury, this must be made with great caution, and only if he is entirely satisfied, upon an authoritative or statutory basis, that he has committed unmistakable error that has caused unquestionable harm." Sciola v. Sharnow,22 Conn. App. 351, 360, 577 A.2d 1081 cert. denied,216 Conn. 815, 580 A.2d 60 (1990). "A charge . . . is to be read as CT Page 136 a whole without the dissection of its parts. It will not be the source of reversible error absent a determination that the probable effect of the charge was to lead the jury to an incorrect verdict. The charge must be examined to determine whether it fairly presents a case to a jury so that no injustice results and is not to be examined with a legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements." (Internal quotation marks omitted.) Glucksman v. Walters, 38 Conn. App. 140, 153, ___ A.2d ___ 1995. The question is whether the jury charge, "taken as a whole . . . fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted. Id., 157.
The court instructed the jury in detail concerning how they may judge the credibility of witnesses both lay and experts. Its instructions were broad enough for the jury to understand that a contradicting statement, or conflicting testimony or evidence, may reflect on the truthfulness or believability of a witness's testimony.[2] The court did not give its charge on the standard of care as it relates to misdiagnoses in the form requested by the plaintiff. However, the court charged fully and properly on the standard of care, relating it specifically to obstetricians and gynecologists, and further instructed the jury to find for the plaintiff if "the plaintiffs have proven by a preponderance of the evidence that the defendants were negligent in one or more ways alleged by the plaintiff, that is, that the defendants failed to properly diagnose a monochorionic, monoamniotic twin pregnancy or failed to properly diagnose cord entanglement . . .".
The court refused to charge on the issue of loss of filial consortium. Although there was a defendants' verdict in this case, and therefore a decision by this court on the issue raised seems not necessary to a determination of the plaintiff's motion, on appeal the Appellate Court, were it to reverse the trial court, might well decide to address the issue of filial consortium since it would likely be raised again on retrial
For that reason, the court will briefly and simply state the reasons for refusing to charge on the issue. A claim of loss of spousal consortium has been recognized by the Connecticut Supreme Court since 1979. See Hopson v. Saint Mary's Hospital,176 Conn. 485, 408 A.2d 260 (1979). The Appellate Court in Mahoney v.Lensink, 17 Conn. App. 130, 55 A.2d 1088 (1988) alluded to Hopson
CT Page 137 by stating that "the right to consortium is said to arise out of a civil contract of marriage, and as such does not extend to the parent-child relationship. Id., 141. Yet no Appellate Court case has yet addressed squarely the issue of whether, under any circumstances, a cause of action for loss of filial consortium lies. Id., 142 (fn. 7). In the Superior Court, there is a split of authority on the question, with the seeming majority of decisions refusing to recognize the cause of action. Flores v. DanburyHospital, Superior Court, judicial district of Danbury, Docket No. 320203 (February 9, 1996, Moraghan J.). But see Kaizina v.Minier, Superior Court, judicial district of Waterbury, Docket No. 0997355 (January 24, 1992, Santos, J.). Because, then, no right of action based upon loss of filial consortium has ever been recognized in the state by an Appellate authority, this court did refuse to charge thereon.
The plaintiff also claims error by the court in three of its evidentiary rulings. The first claimed error is that the court permitted one of the defendants' medical experts, Dr. Kliman, a pathologist, to utilize statements from a medical text to corroborate his opinions when there was no, or inadequate, foundation to do so. Extracts from treatises or texts may be used by a medical expert to confirm his opinion if he testifies that the work is authoritative and he recognizes it as such. Capitanv. Mashkin Freight Lines, Inc., 140 Conn. 327, 150 A.2d 602
(1959). In fact, the defendant laid an adequate foundation for the opinion. Although Dr. Kliman did not use the precise words one word like to hear in the laying of such foundation, his testimony was sufficient for the court to find an adequate foundation had been laid. The Doctor said he and "the people who do placental pathology recognize the author as one of the leading experts" in the field of placental pathology. He testified ". . . obviously no textbook is completely authoritative but this is a very good textbook on placental pathology", which was the area of medicine involved in his testimony.[3]
There are no magic words which must be used in juxtaposition with each other to lay a satisfactory foundation in such a circumstance as this. It is clear from the doctor's testimony that he and his peers recognize the author of the book as an expert and that his textbook is authoritative in the areas being addressed.
The plaintiff also complains of a court ruling allowing Doctor Kliman to testify concerning certain slides he used as CT Page 138 illustrative to the jury. The central issue in this case was whether it was a diamniotic or a monoamniotic pregnancy. The doctor was disclosed as an expert who would give his opinion on that issue and that is what he did. In fact, each medical expert in the case opined on that subject. The plaintiff believes the doctor should not have been allowed to give his opinion on the formation of the sacs, since that was not an opinion that was disclosed pursuant to P.B. section 220d. The doctor's opinion was not a surprise to the plaintiff. The fact that he began his explanation by attempting to educate the jury on the formation of the placenta during gestation and how one sac or two may develop was altogether relevant, helpful, within the ambit of the opinion he was expected to proffer, and admissible.
Likewise, the use of slides by the doctor to illustrate to the jury what he was talking about was properly allowed. Plaintiff's counsel also used helpful illustrative material such as poster boards to aid the jury in understanding the medical evidence he introduced. The plaintiff complains that in their answers to interrogatories and requests for production the defendants did not describe the use of these illustrative slides. The court does not read the plaintiff's interrogatories and production requests and the responses thereto as encompassing the viewing of slides to illustrate the way a placenta is formed. This represented background to the essential issues and given all the testimony and other evidence as to the diamniotic versus monoamniotic issue, the plaintiff could neither have been surprised or prejudiced by it. At best, if error was committed, it was harmless and not deserving of a new trial.
The final ruling stated as a basis of the plaintiff's motion is that the court refused to strike as speculative Dr. D'Alton's testimony concerning spontaneous rupture of the dividing membrane. However, the plaintiff has failed to provide the court with the transcript of the portion of her testimony at issue, or the context in which it was made, or any argument as to how, precisely, the ruling was erroneous or how the plaintiff was so prejudiced as to warrant a granting of his motion.
For all these reasons set forth herein, the plaintiff's motion to set aside the verdict is denied.
D'ANDREA, J.