[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SET ASIDE VERDICTAND MOTION FOR REMITTITUR
After the court granted the plaintiff's motion to bifurcate this trial, the jury rendered a verdict in favor of the plaintiff on the issue of liability, and then on damages, awarding $2,050,000.00
The defendant has moved to set aside the verdict and for a CT Page 7056 remittitur. In the motion to set aside the verdict, the defendant claims the court erred in certain rulings made during the course of the trial and in failing to give certain requested charges to the jury. The primary claims of the defendant seem to be that the court erred in (1) bifurcating the trial, (2) precluding evidence offered by the defendant about the presence of a red car at the scene of the accident, (3) admitting certain expert testimony and (4) permitting an alternate juror to replace a regular juror for the purpose of deliberating on the damages issue when he did not deliberate on the liability issue.
The case is a personal injury action wherein the plaintiff sought damages for serious injuries he incurred when, as a pedestrian, he was struck by a car on the Post Road in Greenwich. The case had been remanded by the Appellate Court for a retrial after there had been a defendant's verdict in the original trial. Upon appeal by the plaintiff, that Court, finding harmful hearsay evidence had been admitted, reversed and remanded.
With respect to the bifurcation of the trial, the court believes it acted properly. Bifurcation of a trial lies solely within the discretion of the court. Swenson v. Sawoska,18 Conn. App. 597, 601, 559 A.2d 1153 (1989); Day v. General ElectricCredit Corporation, 15 Conn. App. 677, 689, 546 A.2d 315 (1988). The plaintiff here sought bifurcation and the court heard argument thereon prior to the start of trial. He argued that bifurcation was appropriate because his expert witness, the treating doctor, was now living in remote Mayfield, Kentucky, that the expense of bringing him to Stamford for the trial and compensating him for his testimony, travel and rooming expense, and for loss of three days of patient time would approximate $10,000.00. He pointed out that the liability issues are hotly contested (a fact apparent from the previous trial) and the damages complex, including whether certain injuries were caused by this accident. The plaintiff also noted that he has been put to this extra expense not by any fault of his own, but because the defendant offered, and the previous court received, inadmissible evidence resulting in a reversal and a new trial.
The defendant argued against the plaintiff's motion for bifurcation claiming that he would be deprived of a full right of cross-examination if he could not put questions to the plaintiff regarding his damages during the liability portion of the trial. It was his contention that if he were able to attack the plaintiff's credibility on the issue of damages, the jury might CT Page 7057 question his testimony concerning the circumstances of the accident.
While the court noted that "[a]lthough precisely which relevant testimony of the plaintiff [sic] the liability might be tested is not readily apparent", the court gave the defendant the benefit of the doubt and denied the plaintiff's motion at that time.
Subsequently, and after the first day of testimony, trial was suspended for a week because of the illness of defendant's counsel, Attorney Peter Dauk. When court was reconvened the plaintiff renewed his motion for bifurcation of trial, based on changed circumstances. Because of Mr. Dauk's illness (to be sure, a circumstance in which he had no culpability) and the plaintiff's resultant inability to present evidence for four days during the week of January 7 through January 10, the plaintiff was subject to the possibility of losing the live testimony of two witnesses. One was officer Cox, formerly a Greenwich police officer, and now a resident of California whose live testimony the plaintiff did in fact lose. By the time the plaintiff became aware that there would be a delay in the trial, officer Cox was already in route to Stamford to testify. The officer was required to return home before the trial would begin again the following week, and the plaintiff was required to use the transcript of his testimony from the prior trial.
The second witness which the plaintiff argued he was in danger of losing for live testimony was the expert witness, the treating physician Dr. Gary Gallo from Kentucky. He represented to the court at the argument of the motion that he had intended to call this witness on Thursday, January 9, 1997 and that the doctor had already blocked out three days time from his patient's schedule to travel north and testify. Non-refundable airline tickets had also been purchased, all of which represented expense for the plaintiff. He also stated that Doctor Gallo might not be able to become available again for up to a "couple of weeks", and the plaintiff suggested he might travel to Kentucky to take the doctor's deposition.[1]
The defendant again objected to the granting of the motion upon the same grounds as he did previously, but also now on the fact that since the plaintiff had, in his opening statement, referred to his damages, the defendant would be prejudiced by what the jury heard in that regard. CT Page 7058
The court did not abuse its discretion in bifurcating the trial. The delay in the presentation of evidence, through no fault of the plaintiff, was prejudicial to him. He had already lost the live testimony of officer Cox, and was faced with a possible loss of the live testimony of Dr. Gallo. Substantial expense had been incurred in scheduling Dr. Gallo the first time. In addition, the court was of the view that with the vigorously contested issue of liability,[2] a defendant's verdict was certainly a possibility (there having been such a verdict in the first trial), and a bifurcation would, in such event substantially shorten the trial. The court also perceived some negative reaction from some jurors at the prospect of the trial continuing beyond the date originally expected for its completion.
The court also found that the defendant would not be prejudiced by a bifurcation. His due process right to cross-examination was not abridged. He had an opportunity to and did cross-examine the plaintiff on the liability issue, and fully cross-examined him on the issue of damages. The defendant was not deprived of any constitutional right because he was unable to cross-examine on both issues at one time, nor does the defendant provide any authority that substantiates his position that the court erred in its ruling. The defendant also claims that he was prejudiced by the fact that, after the liability portion of the trial was completed, Dr. Gallo did in fact appear in person to testify. However, there was no misrepresentation to the court by the plaintiff in that regard. At the time of argument on the motion to bifurcate, the plaintiff expressed his concern about his ability to obtain the doctor's presence in court, and that the doctor might not be able to free himself to travel for a "couple of weeks." The court does not see any misrepresentation in counsel's comments. Furthermore, that Dr. Gallo was in fact able to come to Connecticut in a timely fashion not only did not prejudice the defendant, but rather inured to the benefit of both parties since it made a trip to Mayfield, Kentucky for a deposition unnecessary. The court made its ruling on the basis of circumstances and representations made at the time and it is not rendered erroneous by virtue of the fact that Dr. Gallo agreed to come to court after all.
Nor was the defendant prejudiced by the opening statement of the plaintiff's counsel in which references had been made to the plaintiff's damages. In the liability portion of the trial the CT Page 7059 jurors heard no evidence whatever of damages. In that portion of the charge, the court gave this instruction to the jury:
 "The plaintiff's claim that the defendant was negligent in causing the motor vehicle incident at issue in this case and the defendant's contrary claim that the plaintiff was contributorily negligent are commonly referred to as the liability phase of the case and involves, in essence, the determination of who was at fault in the accident at issue. Ordinarily, trials of automobile cases such as this one also involve a second or damages phase in which the jury, if it finds the defendant liable, determines the amount of compensation that should be awarded to the plaintiff.
 You may recall however, that I told you on Tuesday that for reasons which you need not consider I have determined that the trial of this matter is to be divided, and that you will only be considering the issue of liability at this time, and will not be considering the issue of damages, and therefore I will not be instructing you on the law of damages."
The court in its preliminary instructions cautioned the jury that the remarks of counsel in opening argument do not constitute evidence.[3] In his closing argument at the conclusion of the liability case, the plaintiff's counsel made no reference to damages. Finally, in submitting the verdict forms to the jury at the conclusion of the damages portion of the trial, the court instructed the jury as follows:
 "You will be receiving one verdict form. That is because you already found against the defendant on the issue of liability, therefore, you will have a simple form where you will insert the amount of damages, if any, you find that the plaintiff has suffered.
 Now, because you have already found the defendant in this case liable, the fact of his negligence, or the extent of his negligence must not enter into your deliberations at this time. You should dismiss from your minds any biases or prejudices you may have formed in the first part of this trial, and determine CT Page 7060 whether the plaintiff has proven to you by a fair preponderance of the evidence each element of the damages he claims. The purpose of an allowance of damages is not in any way to punish or penalize the defendant."
In view of these various instructions the court does not believe the defendant could have been prejudiced by remarks of plaintiff's counsel in his opening statement.
The defendant's claim that the court erred in excluding testimony with respect to the presence of a red car at the scene is without merit. Said testimony could only have been hearsay, or have resulted in hearsay, and was the same type of evidence permitted by the trial court in the prior trial and found by the Appellate Court to constitute harmful error. O'Shea v. Mignone,35 Conn. App. 328, 647 A.2d 37 (1994).
With respect to the admission of expert testimony, there was a proper foundation for all of the testimony of Dr. Gallo allowed by the court. As to the testimony of the therapist, Mr. DiNicola, his opinions concerning the condition of the plaintiff were clearly within the expertise of his profession and properly admitted.
The defendant next claims that the court erred in failing to grant his motion for mistrial after an alternate juror was selected to substitute for a regular juror when the alternate had not deliberated on the liability portion of the bifurcated trial. Juror Milne was excused by the court after the jury found in favor of the plaintiff on the liability issue in the case and before any evidence was presented on damages. The case had taken longer than expected and Mr. Milne had other pressing engagements. Alternate juror Vlash heard all the evidence in the case, both on liability and damages, and was permitted by the court to be substituted for Mr. Milne and to participate in the juror's deliberations on damages. The court is not able to discern the prejudice that the defendant claims to have suffered as a result of these procedures, nor does the defendant offer any legal basis for attacking them.
The defendant also claims error in the court's failure to give certain of the defendant's requests to charge. The court has reviewed all of these claims, and finds that the substance of all the requests was adequately covered by the charge the court gave. CT Page 7061 A motion to set aside the verdict "allows the trial court, in the less hectic atmosphere of a post trial proceeding, to reconsider its rulings and if they are determined to have been erroneous as well as harmful, to grant a new trial without the necessity of an appeal; . . . ." Sapporoso v. Aetna Life Casualty Co,221 Conn. 356, 363, 703 A.2d 1160 (1992). "Although a trial judge may set aside a verdict for misstatements in his charge to the jury, this must be done with great caution, and only if he is entirely satisfied, upon an authoritative or statutory basis, that he has committed unmistakable error that has caused unquestionable harm." Sciola v. Shernow, 22 Conn. App. 351, 350, 577 A.2d 1081, cert. denied, 216 Conn. 815, 580 A.2d 60 (1990). "A charge . . . is to be read as a whole without the dissection of its parts. It will not be the source of reversible error absent a determination that the probable effect of the charge was to lead the jury to an incorrect verdict. The charge must be examined to determine whether it fairly presents a case to a jury so that no injustice results and is not to be examined with a legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements." (Internal quotation marks omitted.) Glucksman v.Walters, 38 Conn. App. 140, 153, A.2d (1995). The question is whether the jury charge, "taken as a whole . . . fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted). Id., 157.
When read as a whole, the charge does not have the probable effect of leading the jury to an incorrect verdict. On the contrary, taken as a whole, it fairly and adequately presented the case to the jury so that no injustice resulted.
In a separate motion, the defendant requests the court to grant a remittitur claiming that "the jury verdict was unreasonable and excessive under the circumstances and in contradiction with the facts, evidence and law in the case."
A trial judge has the duty to set aside a verdict and grant a new trial when he or she finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality. Viril v. Heintz, 163 Conn. 23, 27,301 A.2d 249 (1972). The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages CT Page 7062 or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. Virgil v. Heintz, supra 28; Briggs v. Becker, 101 Conn. 62 (1924). It is the court's duty to set aside the verdict when it finds that it does manifest injustice and is . . . palpably against the evidence.Mamley v. Lopez, 208 Conn. 675, 679-80, 546 A.2d 264 (1988). If the amount awarded shocks the sense of justice as to what is reasonable, then the inferred conclusion is that the jury was misguided in reaching its decision. Id., 680.
The injury in this case occurred in 1985 when the plaintiff was struck by a car operated by the defendant. It will serve no useful purpose here to recount all the evidence relating to the extent of the plaintiff's injuries. It is true that the defendant questioned whether some of the plaintiff's injuries were due to a prior accident suffered by the plaintiff in 1982. However, there was abundant testimony substantiating the plaintiff's claim that he suffered severe debilitating and permanent injuries as a result of the 1985 accident.
The jury awarded the plaintiff $2,050,000.00. Credible evidence from the plaintiff, his treating orthopedist Dr. Gallo, a physical therapist, and the plaintiff's daughter established the severity and extent of the plaintiff's injuries and his disability resulting from the subject accident, permanency, pain and suffering, and loss of enjoyment of life's activities. He was confined to institutional care for a total of 264 days between May 10, 1985 and January 28, 1986. He underwent multiple surgeries and incurred medical expenses totaling $184,000.00.
There was ample evidence that these expenses and the injures, damages and losses claimed by the plaintiff were causally related to the May 10, 1985 accident.
Given all the evidence presented to the jury, upon which it could reasonably have based its verdict, the court cannot find that the jury's award fails to fall somewhere within the necessarily uncertain limits of just damages; nor does the size of the verdict so shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. Virgil v. Heintz, 163 Conn. 23, 28,301 A.2d 249 (1972).
For the reasons set forth above, both the defendant's motion CT Page 7063 to set aside the verdict and his motion to remittitur are denied.
So Ordered.
Dated at Stamford, Connecticut, this 10th day of June, 1997
D'ANDREA, J.