STEVE DAY ET AL. *v.* GENERAL ELECTRIC
CREDIT CORPORATION ET AL.
(5357)

BORDEN, DALY and NORCOTT, Js.

Argued May 11—decision released August 23, 1988

*Edward Maum Sheehy,* with whom was *Ronald D. Williams,* for the appellant-appellee (named plaintiff).

*James R. Fogarty,* with whom, on the brief, was *Andrew P. Nemiroff,* for the appellees-appellants (defendant Stamford Square Associates et al.).

*Lawrence W. Kanaga,* for the appellee (defendant Robert E. Tierney).

*Edwin L. Doernberger,* for the appellee (defendant Keith L. Fitch).

*John S. McGeeney,* with whom, on the brief, was *John F. Spindler,* for the appellees (named defendant et al.).

BORDEN, J. The plaintiff[1] brought this action against the defendants[2] seeking damages for an alleged conspiracy to defraud him by means of various misrepresen-

---

[1] The original complaint was brought by the plaintiff Steve Day and the plaintiff Theodora Day. Thereafter, Theodora Day withdrew as a plaintiff.

[2] The defendants involved in this appeal and their relationships are as follows. The named defendant is General Electric Credit Corporation (GECC). The defendant Charles G. Klock was president of GECC until January 1, 1975. The defendant John W. Stanger was vice-president and general manager of commercial and industrial financing for GECC and reported to Klock. The defendant Keith L. Fitch was in charge of real estate financing for GECC. The defendant Robert E. Tierney worked in Stanger's department on Fitch's staff as manager of loan origination. The defendant L. A. Bossidy, on January 1, 1975, replaced Stanger as manager of commercial and industrial financing and reported to Stanger, who became president, and Fitch reported to Bossidy.

The defendant Stamford Square Associates (SSA) is a limited partnership of which the defendant General Electric Real Estate Credit Corporation (GERECCO), the designee of GECC, and defendant Stamford Square, Inc. (SSI), the designee of the defendant Henry A. Ashforth, Jr., are acting general partners, and of which the plaintiff is the limited partner. The defendant Bruce F. Cohen acted as Ashforth's attorney during his negotiations with the plaintiff.

The original complaint was withdrawn as to three other defendants.

tations, and for an alleged tortious interference with a contractual relationship. The plaintiff appeals from the judgment, after a jury trial, rendered in favor of the defendants, claiming that the trial court erred in (1) granting the defendant Robert E. Tierney's motion for summary judgment, (2) directing a verdict for the defendant Charles G. Klock, (3) granting the motion in limine, filed by the defendant General Electric Credit Corporation (GECC), to preclude certain expert testimony, (4) sustaining the defendant Keith L. Fitch's objection to the introduction of certain evidence, and (5) refusing to charge the jury as requested by the plaintiff.

The defendants Stamford Square Associates (SSA), Stamford Square, Inc. (SSI) and Henry A. Ashforth, brought a counterclaim against the plaintiff alleging a breach of certain warranties, representations and indemnities contained in their partnership agreement with the plaintiff. These defendants cross appeal from the judgment on the counterclaim for nominal damages in the amount of $1, claiming that the court erred in (1) limiting the jury to nominal damages on the counterclaim, and (2) refusing to bifurcate the trial on the counterclaim. We find no error on the appeal and no error on the cross appeal.

## I

### THE PLAINTIFF'S APPEAL

The evidence and claims relevant to the plaintiff's appeal are as follows. In 1970, the plaintiff acquired title to six lots in Stamford on which he intended to construct an office building. He was approached by GECC, through Tierney, to engage in a joint venture on the site. Over the course of time, GECC loaned the plaintiff in excess of $2,000,000 for the project, taking mortgages on the property and on the plaintiff's family home. The mortgage documents restricted the

plaintiff's ability to obtain subsequent financing and to prepay the mortgage. The plaintiff claimed that Tierney represented to him that GECC was engaged in a joint venture with him to develop the project on a fifty-fifty basis, that the plaintiff would be the developer and GECC would provide all financing, and that GECC would never foreclose on the plaintiff's home.

In June, 1974, the plaintiff was in a weak financial position. The following month, John W. Stanger, an officer of GECC, sent a memo to Fitch requesting that Fitch notify the plaintiff that GECC would no longer participate in developing the property. In August, 1974, Tierney told the plaintiff not to count on GECC for further financing of the project, although thereafter GECC made another loan to the plaintiff.

In March, 1975, the plaintiff's loans were in default. The plaintiff entered negotiations with various joint venture partners to construct the office building, but GECC refused to approve any of the proposed partners. GECC also informed the plaintiff that unless the loans were repaid, it would institute foreclosure proceedings.

In October, 1975, the plaintiff contacted Ashforth, who, the plaintiff claimed, agreed to a joint venture for an office building on a fifty-fifty basis with the plaintiff, with Ashforth contributing $1,000,000 and the plaintiff obtaining the land and building permits and plans. The plaintiff then introduced Ashforth to GECC as his joint venture partner. In November, 1975, GECC and Ashforth agreed that they would be equal partners in the project, with the plaintiff receiving a 15 percent share as a limited partner.

On May 20, 1976, a closing was held for the formation of the partnership. SSI and GECC became general partners, each with a 42.5 percent interest, while the plaintiff became a 15 percent limited partner. At

the time, the plaintiff was without significant assets. The plaintiff claimed that between October, 1975, and the closing, GECC made repeated threats to foreclose on the plaintiff's family home. Under these circumstances, which the plaintiff claimed to constitute duress, the plaintiff signed the closing documents and a limited release as to GECC. He conveyed his interest in the Stamford property to the partnership, receiving $300,000 and the cancellation of approximately $1,800,000 in debt owed to GECC. At the time of the signing of the limited release, the plaintiff believed that the mortgages on his properties were enforceable. The plaintiff claimed that he subsequently learned from Tierney that the mortgages were not legally enforceable.

On May 16, 1979, the plaintiff instituted this action in six counts. Later, he filed an amended complaint containing two counts. In the first count, the plaintiff alleged that all of the defendants had engaged in a conspiracy to defraud him of his one-half interest in the Stamford Square project by means of various misrepresentations, namely, that GECC would never foreclose on the plaintiff's home and that GECC could validly foreclose its mortgages on the plaintiff's property. He alleged that these misrepresentations were made in order to induce him to abandon efforts to obtain development financing for the project from any source other than GECC. The plaintiff further alleged that he relied on the misrepresentations by abandoning all such efforts, by committing himself to obtaining development financing from GECC, by agreeing to release claims against GECC and the other defendants, and by conveying the property to GECC. The plaintiff also alleged that he would not have signed the closing documents if he knew the mortgages were not enforceable, and that, at the time of closing, he had no knowledge of the claims he made in this case as he

had relied on the representations of GECC and Ashforth regarding the property and mortgages, placing his trust and confidence in them. In the second count, the plaintiff alleged that the defendants GECC, Stanger, and Fitch tortiously interfered with his contractual relationship with Ashforth, or with the contractual negotiations between him and Ashforth. The defendants denied the critical allegations of the complaint, and filed numerous special defenses.[3]

In pretrial proceedings, the court granted Tierney's motion for summary judgment on the ground that the plaintiff's claim against Tierney was barred by the statute of limitations because Tierney left the employ of GECC in June, 1975, and thereafter had no authority with regard to the transactions which are the subject of this case. The case was thereafter tried to a jury. At the conclusion of the plaintiff's evidence, the court granted Klock's motion for a directed verdict. The jury returned a general verdict in favor of all of the remaining defendants on the complaint. This appeal followed.

A

The plaintiff's first claim is that the trial court erred in granting Tierney's motion for summary judgment. The court relied on Tierney's statute of limitations defense in granting the motion.

The plaintiff's suit against Tierney was based on fraudulent misrepresentation. Claims based upon fraudulent misrepresentation are governed by the three year statute of limitations of General Statutes § 52-577. *Wedig* v. *Brinster,* 1 Conn. App. 123, 135–37, 469 A.2d 783 (1983), cert. denied, 192 Conn. 803, 472 A.2d 1284 (1984). Any fraudulent misrepresentations by Tierney

---

[3] Tierney filed thirteen special defenses. GECC, GERECCO, Stanger, Klock and Bossidy filed eleven special defenses. Fitch filed twelve special defenses. Ashforth, SSI, SSA, and Cohen filed nine special defenses.

were made prior to his departure from his employment with GECC, which was more than three years before the plaintiff sued Tierney.

In order to avoid the application of the statute of limitations to his claim, the plaintiff contends that the statute of limitations did not begin to run until the May 20, 1976 closing because (1) Tierney's wrongful conduct was part of a conspiracy among the defendants, and the statute of limitations did not begin to run until May 20, 1976, when the last overt act pursuant to the conspiracy was completed; (2) Tierney committed acts of fraudulent concealment sufficient to toll the running of the statute of limitations; and (3) duress operated to toll the statute of limitations. We disagree.

Under the facts of this case, we need not address whether the limitations period with respect to a claim of fraudulent misrepresentation allegedly made during the course of a conspiracy begins to run only at the completion of the conspiratorial conduct. Prior to Tierney's departure from his employment with GECC, the alleged conspiracy involved only GECC and its employees. The other defendants either did not yet exist or did not act in concert with GECC with respect to the subject matter of this litigation until after Tierney was no longer associated with GECC. Employees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them; each acts for the corporation and the corporation cannot conspire with itself. 15A C.J.S., Conspiracy § 2, pp. 599–600; *Herrmann* v. *Moore,* 576 F.2d 453, 459 (2d Cir.), cert. denied, 439 U.S. 1003, 99 S. Ct. 613, 58 L. Ed. 2d 679 (1978); *Lieberman* v. *Gant,* 474 F. Sup. 848, 875 (D. Conn. 1979), aff'd, 630 F.2d 60 (1980); *Merkel Associates, Inc.* v. *Bellofram Corporation,* 437 F. Sup. 612, 618 (W.D.N.Y. 1977); *Cole* v. *University of Hartford,* 391 F. Sup. 888, 891–94 (D. Conn. 1975). Since there was no conspiracy when Tierney allegedly

made the misrepresentation regarding foreclosure of the plaintiff's home, the plaintiff's conspiracy claim did not bar the running of the statute of limitations with respect to Tierney.

We next consider the plaintiff's argument that the statute of limitations did not begin to run with respect to his claim against Tierney until some time in 1978 because of Tierney's alleged acts of fraudulent concealment. This argument is without merit.

First, the plaintiff failed specifically to plead his claim of fraudulent concealment pursuant to General Statutes § 52-595, in response to Tierney's statute of limitations defense. See *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 150, 163, 464 A.2d 18 (1983). Second, the record is devoid of any evidence suggesting affirmative acts of concealment on Tierney's part. The plaintiff argues that silence will constitute an act of concealment if a fiduciary relationship exists between the parties. The plaintiff's affidavit filed in response to Tierney's motion for summary judgment, however, discloses no facts with respect to the existence of a fiduciary relationship between Tierney and the plaintiff. At most, the affidavit suggests that a fiduciary relationship may have existed between the plaintiff and GECC.[4] See *Albom* v. *Katz Corporation,* 39 Conn. Sup. 533, 536, 466 A.2d 1026 (1983).

Finally, the plaintiff's contention that issues of fact existed as to whether duress by Tierney tolled the statute of limitations, is also without merit. There was no evidence before the court from which it could have concluded that a genuine issue of fact existed on this ques-

---

[4] Paragraph 14 of the plaintiff's affidavit states: "During the entire course of my business relationship with GECC, up until and including the closing on May 20, 1976, I relied upon, trusted, and followed GECC's advice and counsel regarding the development of the property and the financing of that development by GECC."

tion. The plaintiff has failed to refer this court to any portion of the record in support of this claim.

## B

Klock retired from GECC on January 1, 1975. The trial court properly directed a verdict in favor of Klock for the reasons set forth in Part IA above: as an employee of GECC, he was not a part of any actionable conspiracy. Thus, the statute of limitations began to run with respect to the claim against him more than three years before suit was brought, and not, as claimed by the plaintiff, on May 20, 1976.

## C

The plaintiff next raises two claims of evidentiary error. We have fully reviewed the record and the plaintiff's arguments with respect to these claims. We conclude, however, that the court did not err in excluding the evidence proffered by the plaintiff.

## D

The plaintiff's final claims of error pertain to the court's instructions to the jury on two aspects of his theories of liability. The plaintiff, however, did not request interrogatories to the jury to obtain separate jury findings on the controverted issues in the case. Since the jury returned a general verdict for all the defendants, we "will presume that the jury found every issue in favor of the prevailing party." *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 202, 520 A.2d 208 (1987). If there are two or more distinct defenses, and there is no error as to one of them, the court must presume that the jury found the facts with respect to that defense in favor of the defendants, and the general verdict must be sustained, regardless of any error which might have affected other defenses. Id. In this case, the defendants asserted numerous special defenses. See footnote 3, supra. The plaintiff's claims of error do not

implicate any of these special defenses. Thus, the general verdict rule precludes review of the plaintiff's claims of instructional error.

## II

### The Cross Appeal

The defendants SSA, SSI and Ashforth filed a counterclaim against the plaintiff. They alleged that the plaintiff breached certain warranties, representations and indemnities contained in the written partnership agreement dated May 20, 1976. That agreement provided that the plaintiff would indemnify the partnership and hold it harmless from any liability or obligation resulting from any breach of the covenants made thereto by the plaintiff, including fees and disbursements of counsel resulting from any attempt by any person to assert such liability or obligation. The only damages that these defendants sought to prove on the counterclaim were their legal fees.

The jury returned a verdict in favor of SSA against the plaintiff on the counterclaim in the amount of $15,001. The jury returned verdicts against SSI and Ashforth on the counterclaim. In response to the plaintiff's motion to set aside the verdict, the court modified SSA's award on the counterclaim to $1. Defendants SSA, SSI, and Ashforth cross appealed from the judgment on the counterclaim.

### A

The defendants first claim that the court erred in refusing to give their request to charge, which would have permitted the jury, in the absence of direct evidence regarding the amount of time devoted to the presentation of the case in court by the defendants' counsel, to use the court's estimate of that time. There was evidence introduced by the defendants regarding what was a reasonable hourly rate for legal services

in the case. There was no evidence, however, of the amount of time spent by the defendants' counsel, of any bills rendered or of any fee arrangement. Thus, the defendants sought to combine the evidence of an hourly rate with the court's estimate of the time spent by the defendants' counsel in court. The court, instead, instructed the jurors that they could award only nominal damages because "[t]here has not been any evidence as to the defendants' legal fees or costs."

In support of their position, the defendants rely upon holdings by our Supreme Court and by this court that "courts may rely upon their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Bizzoco* v. *Chinitz*, 193 Conn. 304, 310, 476 A.2d 572 (1984); *Guaranty Bank & Trust Co.* v. *Dowling*, 4 Conn. App. 376, 386, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985). This line of authority, however, applies where the amount sought is based on a contractual provision for "reasonable attorney's fees." Here, by contrast, the defendants' claim was one of indemnification, in the words of the partnership agreement, to "hold [the defendants] harmless from . . . all costs, expenses and damages, including fees and disbursements of counsel." Under these circumstances, the fees sought by the defendants were reimbursement for their actual expenditures for legal services, an item of damages requiring evidence to support an award of more than nominal damages. *Storm Associates, Inc.* v. *Baumgold*, 186 Conn. 237, 245–46, 440 A.2d 306 (1982). Neither the court nor the jury was entitled to infer that the combination of the evidence of an hourly rate and the court's estimate of the time spent in court constituted the fee of the defendants' counsel.

## B

The defendants next claim that the trial court erred in refusing to bifurcate the trial on the counterclaim

in order to permit the jury to hear evidence on the issue of counsel fees separately from the other issues in the case. Recognizing that the issue of bifurcation of trial proceedings lies solely within the discretion of the trial court; *In re Jose C.,* 11 Conn. App. 507, 508, 527 A.2d 1239 (1987); the defendants argue that the court abused that discretion in this case because proof of actual expenditures for legal services required the testimony of trial counsel, leaving the defendants with the Hobson's choice between having counsel testify, thereby raising serious ethical considerations and possibly causing counsel's disqualification from representation at trial, and not having counsel testify, leaving the defendants without evidentiary support for their claim for actual damages. We do not agree.

The short answer to the defendants' claim is that the ethical dilemma perceived by the defendants simply did not exist. Our Rules of Professional Conduct provide that a lawyer may both act as an advocate and appear as a witness in the same trial where the lawyer's "testimony relates to the nature and value of legal services rendered in the case." Rules of Professional Conduct, Rule 3.7 (a) (2). In addition, the defendants were not required to prove their damages on the counterclaim through the testimony of their attorney. They could have testified regarding the amount of their attorney's fees incurred in connection with the case, and introduced into evidence copies of their attorney's statements for services rendered, or produced the testimony of an employee of their attorney who is responsible for preparing billing statements.

There is no error on either the appeal or the cross appeal.

In this opinion the other judges concurred.