**T.F.T.F. CAPITAL CORP., Plaintiff,**

v.

**MARCUS DAIRY, INC.,
et al., Defendants.**

**No. 5:91CV483 WWE.**

United States District Court,
D. Connecticut.

Nov. 6, 1998.

William H. Prout, Jr., Penny Q. Seaman, Wiggin & Dana, New Haven, CT, Howard B. Naylor, Davidson & Naylor, Norwalk, CT, Price O. Gielen, Neuberger, Quinn, Gielen, Rubin & Gibber, Baltimore, MD, Bruce M. Luchansky, Kollman & Sheehan, Baltimore, MD, Elizabeth P. Gilson, New Haven, CT, for T.F.T.F. Capital Corp.

Jennifer Landsman Chobor, Cohen & Wolf, P.C., Bridgeport, CT, for Marcus Dairy, Inc.

Jonathan E. Spodnick, Moynahan, Ruskin, Mascolo, Mariani & Minnella, Waterbury, CT, David B. Zabel, Marci J. Silverman, Jennifer Landsman Chobor, Cohen & Wolf, P.C., Bridgeport, CT, for Michael Marcus.

Jonathan E. Spodnick, Moynahan, Ruskin, Mascolo, Mariani & Minnella, Waterbury, CT, Ronald D. Japha, Abraham I. Gordon, Gordon & Scalo, Bridgeport, CT, for James E. Sullivan.

Jonathan E. Spodnick, Moynahan, Ruskin, Mascolo, Mariani & Minnella, Waterbury, CT, Susan S. Chambers, Carmody & Torrance, New Haven, CT, Leonard Merrill Isaac, Brennan, Santoro & Isaac, Waterbury, CT, for Dominick Barbiero.

Jonathan E. Spodnick, Frederic E. Mascolo, Moynahan, Ruskin, Mascolo, Mariani & Minnella, Waterbury, CT, for Agnes Barbiero.

*RULING ON MOTION FOR SUMMARY JUDGMENT*

EGINTON, Senior District Judge.

Pending before the court are defendants Marcus Dairy, Inc. and Michael Marcus' ("defendants Marcus") motion for summary judgment. Based on the following discussion, defendants' motion will be granted.

## I. *Background*

Pursuant to the parties' Local Rule 9 submissions, the facts relevant to this discussion are as follows. Naugatuck Dairy Ice Cream Company, Inc. ("Naugatuck") was a Connecticut corporation whose majority shareholders were Marcus Diary, Inc. ("Marcus Dairy") and Dominick Barbiero. The business of Naugatuck was the processing and packaging of ice cream products. Plaintiff T.F.T.F. is a holding company consisting in part of the following corporations: Jacene Realty and West County Realty, Inc.

In March 1988, Dominic Barbiero, Marcus Diary, Inc., and Naugatuck Dairy Ice Cream Co., Inc., (collectively the "Sellers") entered into an agreement with Freedom Foods, Inc., ("Freedom") pursuant to which the Sellers agreed to transfer the majority of Naugatuck's stock to Freedom (the "Agreement"). The sale of production equipment and inventory was financed by two promissory notes from Freedom to Naugatuck in the amounts of $92,500 and $200,000, respectively. Naugatuck thereafter assigned to Marcus Dairy its accounts receivable, the $92,500 Note and the $200,000 Note. To induce Marcus to accept the assignment, West County Realty provided a guarantee of the amounts due under the Notes with a mortgage in the amount of $100,000 on West County property in favor of Marcus Dairy. Jacene Realty secured both Notes with a guarantee collateralized by a mortgage in the amount of $200,000 on Jacene Realty property in favor of Marcus Dairy.

Following the closing, Marcus Dairy and Freedom agreed to a price adjustment calling for Freedom to pay an additional $62,500. Marcus Dairy agreed to accept a promissory note in lieu of a cash payment. Marcus Diary claims, however, that Freedom did not deliver an executed note in the amount of $62,500. After the closing, Freedom discovered that it did not have the proper licenses to manufacture and sell ice cream. Freedom thereafter transferred the inventory back to Naugatuck for consideration, and leased the plant's production equipment to Naugatuck. On April 26, 1988, Freedom transferred the ice cream production equipment, and assigned the corresponding lease agreement, to plaintiff for consideration.

Defendants claim that Freedom defaulted on the Notes. Marcus Diary thereafter filed an Application for Prejudgment Remedy against Freedom in the Connecticut superior court seeking attachment of Freedom's accounts receivable as security for the debt. Subsequently, Marcus Dairy filed an Application for Supplemental Ex Parte Prejudgment Remedy in the same action seeking attachment of virtually all of Freedom's assets up to $200,000. These applications were granted by the court. In March 1992, judgment was entered in favor of Marcus Dairy and against Freedom in the state court action for $213,742.79 damages, plus interest of $90,878.63, attorney fees of $7,500 and costs of $1,557.40.

In counts two and six of the amended complaint, plaintiff asserts claims of abuse of process against defendants Marcus for their alleged improper pursuit of the state court action. In counts one, four and six, plaintiff claims that defendants Marcus tortiously interfered with plaintiff's expectation of financial gain from the lease with Naugatuck. In Counts three, five and seven, plaintiff alleges that defendants Marcus made fraudulent misrepresentations in the Agreement and an Opinion Letter by counsel for Marcus and Naugatuck that Naugatuck owned certain equipment.

Defendants Marcus argue, *inter alia*, that plaintiff's claims for abuse of process and tortious interference are barred under the *Noerr–Pennington* doctrine and plaintiff's fraudulent misrepresentation claim is untimely under the applicable statute of limitations. Based on the following discussion, the court agrees.

## II. *Discussion*

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### A. *Abuse of Process and Tortious Interference with Contract*

■ The *Noerr–Pennington* doctrine derives from a trilogy of Supreme Court cases, *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), and has its roots in the First Amendment. It establishes a party's right to petition all branches of the government by providing broad antitrust immunity to a petitioning defendant despite an anticompetitive purpose. *Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18, 20 (2d Cir.1980). An exception to the *Noerr–Pennington* doctrine exists where the governmental petitioning is a mere sham covering up attempts to interfere directly with the business relationships of competitors. *Eastern Railroad*, 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The issue in this case is whether this doctrine applies outside the scope of an antitrust lawsuit to plaintiff's state law abuse of process and tortious interference claims.

■ In *Suburban Restoration Co. v. AC-MAT Corp.*, 700 F.2d 98 (1983), the Second Circuit found that the filing of a non-sham lawsuit could not as a matter of law form the basis of a claim under the Connecticut Unfair Trade Practices Act ("CUTPA") or a ·common law claim of tortious interference with business expectancy because imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems under the First Amendment. Connecticut courts have applied the *Noerr–Pennington* doctrine to defeat state law claims, relying on the reasoning in *Suburban Restoration* and the likelihood that a contrary result would violate the First Amendment and the corresponding provision under the Connecticut state constitution.

For example, in *Abrams v. Knowles*, 1990 WL 265241 (Conn.Super. Dec.4, 1990), the court, relying on the *Noerr–Pennington* doctrine and the reasoning in *Suburban Restoration*, found that a CUTPA claim alleging the filing of a sham suit in which an attachment was sought cannot be sustained where probable cause was found for the attachment. In *Connecticut Nat'l Bank v. Mase*, 1991 WL 32151 (Conn.Super. Jan.31, 1991), the court held that the filing of a single non-sham lawsuit with a judicially ordered real estate attachment cannot form the basis of a CUTPA or tortious interference with business expectancy claim based on the First Amendment and corresponding state constitutional right to access the courts. Finally, in *Roncari Development Co. v. GMG Enterprises, Inc.*, 45 Conn.Supp. 408 (Conn.Super.1997), the court, citing *Suburban Restoration*, held that the plaintiff's claims of antitrust practices, tortious interference with business expectancy and CUTPA violations were barred by the *Noerr–Pennington* doctrine.

■ Plaintiff argues that even if the *Noerr–Pennington* doctrine applies, its claims should survive under the sham exception to the doctrine. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), the Supreme Court

outlined the requirements of this exception. One of the requirements is that

the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.

(Internal quotations marks and citations omitted). 508 U.S. at 60, 113 S.Ct. 1920. Pertinent to this discussion is the Court's finding that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Professional Real Estate Investors,* 508 U.S. at 60, n. 5, 113 S.Ct. 1920. Because Marcus Dairy obtained a judgment in its favor against Freedom in the state court action, plaintiff cannot meet the first prong of the sham exception test. Accordingly, plaintiff's abuse of process and tortious interference with contractual relations cannot be sustained.

### B. *Fraudulent Misrepresentation*

 A fraudulent misrepresentation claim is governed by the three-year statute of limitations under Conn.Gen.Stat. § 52–577. *Day v. General Electric Credit Corp.,* 15 Conn. App. 677, 683, 546 A.2d 315, *cert. denied,* 209 Conn. 819, 551 A.2d 755 (1988). The three-year time period begins to run on the date of the act or omission complained of, not the date when the plaintiff first discovers an injury. *Fichera v. Mine Hill Corp.,* 207 Conn. 204, 212, 541 A.2d 472 (1988) ("In construing our general tort statute of limitations, General Statutes § 52–577, which allows an action to be brought within three years 'from the date of the act or omission complained of,' we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred").

The alleged misrepresentations made in the Agreement and the Opinion Letter by counsel for Marcus and Naugatuck are both dated March 17, 1988. Plaintiff commenced this action on September 3, 1991, more than three years after the alleged misrepresentations. Plaintiff has not addressed this argument in its briefs and has thereby failed to set forth any facts which would toll the running of the statute of limitations. *See Morelli v. Pezzello,* 1993 WL 34366 (Conn.Super. Feb. 9, 1993)(fraudulent misrepresentation claim dismissed where claim brought outside three-year statute of limitations and plaintiff had not set forth any evidence that claim was subject to tolling).

### III. *Conclusion*

For the foregoing reasons, defendants Marcus Dairy, Inc. and Michael Marcus' motion for summary judgment [# 70] is GRANTED.