[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I INTRODUCTION AND FACTUAL BACKGROUND
The plaintiffs, Beth Bryant Findell Trust (Findell Trust) and Beth Bryant Findell, filed this civil action against the defendants, Kenneth J. Koos, Bernardi and Company, LLC, Omega Threadrolling Grinding, Inc. CT Page 3554 (Omega), Colonial Blower, Inc. (Colonial), Richard Hegg and Daniel Hegg alleging that they have improperly managed or invested assets of the trust. Koos, an accountant with Bernardi and Company, is not only alleged to be the trustee for the plaintiff, but also alleged to be the accountant for both the plaintiff and the defendants Omega and Colonial.
The plaintiffs allege that Richard Hegg is a shareholder, employee and manager of Omega and Colonial with a 68.18 percent share interest in Omega and a 45.45 percent interest share in Colonial and that Daniel Hegg is an employee and manager of Omega and Colonial with a 22.73 percent share interest in Colonial. The plaintiffs allege that the Heggs withdrew money from the Findell Trust and either loaned it to, or invested it in, themselves and/or Omega or Colonial. The plaintiffs allege that the Heggs then failed to repay the amounts taken from the Findell Trust. The plaintiffs further allege that the Heggs failed to inform the plaintiffs of these payments, refused to turn over records concerning the Findell Trust's acquisition of an ownership interest in Omega and Colonial and later attempted to obtain a release from the plaintiffs in exchange for $35,000. The Findell Trust and its trustee, Kenneth J. Koos, own shares in Omega and Colonial.
The Heggs now move to strike count six, a claim of conspiracy to defraud; count seven, breach of contract; count eight, a declaration of constructive trust; count nine, a quantum meruit claim; count ten, which seeks to pierce the corporate veil; and count eleven, in which the plaintiffs seek an accounting. The Heggs also argue that they are not the proper parties for count eleven.
 II DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc.v. Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 383 n. 2,650 A.2d 153 (1994); see also Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992); see also In re Michael D.,58 Conn. App. 119, 122, 752 A.2d 1135, cert. denied, 245 Conn. 911,759 A.2d 505 (2000). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover CT Page 3555 . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.)Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623, 626, 749 A.2d 630
(2000).
In count six of the complaint, the plaintiffs allege that the Heggs conspired with the other defendants in this suit to defraud the plaintiffs. In response, the Heggs argue that the plaintiffs have not sufficiently alleged a claim of conspiracy against them. "The elements of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff" (Internal quotation marks omitted.) Biro v. Hirsch, 62 Conn. App. 11, 16, 771 A.2d 129, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001). The unlawful act alleged by the plaintiffs is that the defendants withdrew money from the Findell Trust and either loaned the money to, or invested the money in, the Heggs, Omega and/or Colonial.
The Heggs argue that their actions are protected by the intracorporate immunity doctrine. This doctrine states that "[e]mployees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them; each acts for the corporation and the corporation cannot conspire with itself" Day v.General Electric Credit Corp., 15 Conn. App. 677, 684, 546 A.2d 315, cert. denied, 209 Conn. 819, 551 A.2d 755 (1988). "One exception to this rule requires the plaintiff to allege that an agent of the corporation has an independent personal stake in achieving the corporation's illegal objective." (Internal quotation marks omitted.) Silva v. New York LifeIns. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 342973 (January 12, 2001, Skolnick, J.).
In the present case, the plaintiffs allege that the Heggs conspired with the other defendants to defraud the plaintiffs. This is sufficient to survive a motion to strike because "[t]he court must construe the facts in the complaint most favorably to the plaintiff" (Internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). Because the facts provable in the complaint would support a cause of action, the motion to strike count six of the complaint is denied.
The Heggs next move to strike count seven, the breach of contract claim, arguing that the plaintiffs have not alleged any contractual relationship between the plaintiffs and the Heggs. In response, the plaintiffs argue that if their allegation that the plaintiffs loaned money CT Page 3556 to the Heggs is proven, it would support a finding of a contractual relationship between them. "In pleading an action for breach of contract, [the] plaintiff must plead: 1) the existence of a contract or agreement; 2) the defendant's breach of the contract or agreement; and 3) damages resulting from the breach." (Internal quotation marks omitted.)Gelormino v. J.C. Penney Co., Superior Court, judicial district of Litchfield at Litchfield, Docket No. 67840 (May 22, 1997, Dranginis,J.).
In the instant case, the plaintiffs allege the existence of promissory note agreements for loans made to Omega and Colonial. Although the exhibits were not attached to the complaint, count seven clearly states that the "loans" were made to Omega and Colonial and not to the Heggs individually. "Connecticut courts require privity of contract in order to maintain a cause of action for breach of contract." (Internal quotation marks omitted.) Chang v. Novella, Superior Court, judicial district of Danbury, Docket No. 311569 (July 28, 1995, Stodolink, J.); Harry P.Carpenter Sons, Inc. v. Hanson, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 125511 (March 23, 1993, Lewis, 1) (8 C.S.C.R. 414); Reynolds v. Owen, 34 Conn. Sup. 107, 111, 380 A.2d 543
(1977). For these reasons, the motion to strike count seven of the complaint is granted.
In count eight of the complaint, the plaintiffs seek to have the court impose a constructive trust against the Heggs. The Heggs move to strike this count, arguing that there are no allegations that the Heggs hold any property or money of the plaintiffs and that it is only alleged that the Heggs received funds upon `information and belief' without any support for this claim. In reply the plaintiffs argue that they have alleged that the Heggs hold funds of the plaintiffs and are obligated to repay the money.[1]
A review of the complaint indicates that there are no facts to support the allegation that the Heggs are in possession of or have personally received any property of the plaintiffs; rather, the plaintiffs have merely alleged conclusions of law. For this reason, the motion to strike count eight is granted.
Count nine of the plaintiffs' complaint is a quantum meruit claim. The Heggs argue that there are no allegations that an implied contract existed between the plaintiffs and them, or that the plaintiffs provided any services to the individual Heggs for which they were not compensated. In response, the plaintiffs argue that the Heggs have been unjustly enriched and that they have sufficiently pleaded a valid equitable cause of action. CT Page 3557
"Quantum meruit is a theory of contract recovery that does not depend upon the existence of a contract, either express or implied in fact . . . [r]ather, quantum meruit arises out of the need to avoid unjust enrichment to a party, even in the absence of an actual agreement. . . . [Q]uantum meruit strikes the appropriate balance by evaluating the equities and guaranteeing that the party who has rendered services receives a reasonable sum for those services." (Citations omitted.) Gagnev. Vaccaro, 255 Conn. 390, 401, 766 A.2d 416 (2001). In the present case there is no allegation that the plaintiffs provided any services to the Heggs for which they were not compensated. For this reason, the motion to strike count nine is granted.
In count ten, the plaintiffs seek to pierce the corporate veil as to the Heggs arguing that the Heggs operated Omega and Colonial without regard for their separate and independent existence. Specifically, the plaintiffs allege that the Heggs essentially operated the corporations for their own personal interests, making them alter egos, while ignoring corporate formalities. Further, it is alleged that the Heggs are employees/managers of Omega and Colonial owning a significant/controlling interest therein. The plaintiffs then allege that the Heggs withdrew money from the Findell Trust and loaned it to/invested it in themselves and have failed to disclose records concerning their ownership interest in Omega and Colonial. In response, the Heggs argue that the plaintiffs have failed to provide a factual basis for their piercing the corporate veil claim.
Our Supreme Court has established two tests for determining whether or not to pierce the corporate veil. The first test is called the instrumentality test. This test requires, in all cases but an express agency, "(1) [c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . ." (Emphasis in original; internal quotation marks omitted.) Davenport v. Quinn, 53 Conn. App. 282, 300, 730 A.2d 1184
(1999); see also Angelo Tomasso, Inc. v. Armor Construction Paving,Inc., 187 Conn. 544, 553-54, 447 A.2d 406 (1982).
The second test established by our Supreme Court to be used in determining whether to pierce the corporate veil is called the identity rule. "The identity rule has been stated as follows: CT Page 3558
If a plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Internal quotation marks omitted.) Davenport v. Quinn, supra, 53 Conn. App. 300-01.
In the present case, the plaintiffs' allegations, which are primarily based "upon information and belief," are simply legal conclusions and legal argument. The plaintiffs have not alleged any independent facts demonstrating the requisite control needed to pierce the corporate veil under the instrumentality test. "The concept of piercing the corporate veil is equitable in nature and courts should pierce the corporate veil only under `exceptional circumstances.'" Id., 301. Accordingly, the motion to strike count ten of the complaint is granted.
In count eleven the plaintiffs seek an accounting to the extent that the Heggs are alleged to have exerted complete control over the corporate defendants. The Heggs move to strike this count arguing that they have no duty, contractually or statutorily, to provide the plaintiffs with an accounting relating to them as individuals or any related entity, other than the corporate defendants. In response, the plaintiffs argue that a contractual relationship has been sufficiently alleged.
As noted previously, the plaintiffs have no contractual agreements with the individual Heggs nor has privity of contract between the plaintiffs and the Heggs been alleged. This court is not aware of any statutory authority providing the plaintiffs the right to an accounting from the individual Heggs' personal finances, other than Omega or Colonial. For this reason, the motion to strike count eleven is granted.
 III CONCLUSION
For the above stated reasons, this court denies the Heggs' motion to strike count six and grants the Heggs' motion to strike, as they apply to them, counts seven through eleven of the complaint.
 ___________________ Berger, J