[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT CONSUMER HEALTHCARE PRODUCTS ASSOCIATION'S MOTION TO STRIKE (#165)
The plaintiffs David Edwards and his wife Ann Marie Edwards assert claims against a number of manufacturers and distributors of products containing phenylpropanolamine (PPA). For decades, PPA was the active ingredient in various over-the-counter cough/cold remedies and weight control products. A study conducted by researchers at Yale University suggested an elevated risk between ingesting PPA in certain instances and the onset of hemorrhagic stroke. As a result of that study, the federal Food and Drug Administration requested in November 2000, that manufacturers withdraw PPA-containing products from the market. Litigation ensued. This case is one of hundreds of cases filed against the manufacturers and distributors of these over the counter (OTC) products containing PPA, in which it is alleged that PPA ingestion caused hemorrhagic stroke.
The complaint in this case alleges that David Edwards had a stroke as a result of ingesting several PPA-containing products which were manufactured, distributed and sold by various defendants. The products that Mr. Edwards ingested included Tavist-D, a cough/cold medication; Dexatrim, an appetite suppressant; and Robitussin, a cough/cold medication. The plaintiffs allege that the ingestion of these products, all of which contained PPA, during a period from December 3 through December 5, 1996, resulted in Mr. Edwards suffering a hemorrhagic stroke. In addition to proceeding against the manufacturers and distributors of these products pursuant to the Connecticut Products Liability Act (CPLA), General Statutes § 52-572m et seq., the plaintiffs assert a civil conspiracy claim against the defendant Consumer Healthcare Products Association (CHPA).
The defendant CHPA, a non-profit trade association based in Washington, D.C., represents the interests of the non-prescription drug and dietary supplement industries. CT Page 2300
CHPA has moved to strike count 31 alleging civil conspiracy, which is the only count in the revised January 29, 2002, complaint pending against this defendant. The plaintiffs have opposed the motion to strike.
The function of a motion to strike is to test the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book § 10-39(a) (5). "[A motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings . . ." (Citations omitted; emphasis omitted). Mingachos v. CVS,Inc., 196 Conn. 91, 108, 498 A.2d 368 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted.) NovametrixMedical Systems v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). "The role of the trial court is to examine the pleadings and construe the allegations in the light most favorable to the pleader in order to determine whether the pleader has stated a legally sufficient cause of action or defense." ATC Partnership v. Windham, 251 Conn. 597,603, 741 A.2d 305, cert. denied, 530 U.S. 1214, 120 S.Ct. 2217,147 L.Ed.2d 249 (1999). "Thus, if facts prove the complaint would support a cause of action, the motion to strike must be denied . . ." (Citation omitted; internal quotation marks omitted.) Gazo v. Stamford,255 Conn. 245, 260, 765 A.2d 245 (2001).
In this case in an earlier ruling filed on July 15, 2002, the court struck the civil conspiracy claims asserted against the manufacturer and distributor defendants as redundant and barred by the CPLA's exclusivity provision. No CPLA claim has been asserted against CHPA.
A claim for civil conspiracy in Connecticut is directed at damages caused by acts pursuant to a conspiracy. Benoit v. Amalgamated Local299, 150 Conn. 266, 276, 188 A.2d 499 (1963). Connecticut law requires that the following elements must be alleged in a civil conspiracy claim: "(1) a combination between two or more persons; (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means; (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object; (4) which act results in damages to the plaintiff." (Citations omitted.) Williams v. Maislen, 116 Conn. 433, 437,165 A. 455 (1933). The basis of CHPA's motion to strike is that the plaintiffs have failed to plead a combination between two or more persons, and have failed to plead either that CHPA acted to perform an illegal or unlawful act or that this defendant acted to perform a lawful act by illegal means. Thus, what is at issue in this case are the first two criteria of a civil conspiracy claim according to Williams.
CT Page 2301
 COMBINATION BETWEEN TWO OR MORE PERSONS
The first required element of a civil action for conspiracy is "a combination between two or more persons." Id. The plaintiffs allege in count 31 that both CHPA and the officers, directors and constituent members of CHPA were involved in the conspiracy. In its brief and in oral argument, the plaintiffs allege that CHPA and its constituent members qualify as the "two or more" entities necessary to meet the first requirement of a civil conspiracy claim. CHPA, on the other hand, relies on what is commonly referred to as the "intracorporate conspiracy doctrine,"[1] which holds that the employees of a corporation acting within the scope of their employment cannot conspire with one another or with the corporation; each acts for the corporation and the corporation cannot conspire with itself. See Day v. General Electric Credit Corp.,15 Conn. App. 677, 684, 546 A.2d 315, cert. denied, 209 Conn. 819,551 A.2d 755 (1988).
The plaintiffs are not claiming that CHPA's employees or directors or officers conspired with CHPA to accomplish a civil conspiracy. Instead, the plaintiffs assert that CHPA is a separate entity from its constituent members, and that CHPA therefore is a second party for purposes of the first civil conspiracy requirement.
CHPA is unable to cite any authority in which a separate entity such as a trade association has been determined to have acted as an agent solely for the corporation. The cases relied upon by CHPA, including Day, involve situations in which the alleged conspirators were persons employed by the corporation. CHPA has not found any authority to support its argument that an independent entity serving as an agent was insufficient for purposes of maintaining a civil conspiracy claim.
The complaint in this case is that the defendant trade association lobbied and resisted efforts to have the PPA products labeled for the risk of hemorrhagic stroke, when they knew or should have known of the life-threatening risk. In the course of that activity, the trade association was acting not only for the defendant manufacturers and distributors in this case, but also on behalf of other constituent members. Thus, in the alleged facts, it is not the case that the "agent" was acting solely for the corporation. In the activities alleged in the complaint, the trade association was acting not for a particular corporation but for an industry consisting of nearly two hundred corporate entities involved in the sale of OTC cough, cold and dietary products. This is not the case to extend the civil conspiracy intra-corporate doctrine defense to a separate entity under agency theory. CT Page 2302
PERFORMANCE OF A CRIMINAL OR UNLAWFUL ACT OR A LAWFUL ACT BY CRIMINAL OR UNLAWFUL MEANS
The second criteria of Williams v. Maislen, supra, 116 Conn. App. 436, requires the performance of a criminal or unlawful act or a lawful act by criminal or unlawful means.
Count 31 of the revised complaint alleges that CHPA and the manufacturing defendants "conspired and colluded together" for the purpose of continuing the OTC sale of PPA-containing products when they "knew and/or should have known" that the "products were defective and unsafe."
In their brief, the plaintiffs allege that this alleged conduct by CHPA is "a breach of a legal duty owed by the CHPA to the plaintiffs." (Brief in opposition to motion to strike (#177), p. 6.) In support of this proposition, the plaintiffs cite Governor's Grove Condominium Ass'n v.Hill Dev. Corp., 36 Conn. Sup. 144, 414 A.2d 1177 (1980). In that case, the fraudulent concealment of a defective roof by a builder and a developer were found sufficient for purposes of alleging an "unlawful act or a lawful act by unlawful means." In this case, the alleged violation of a duty owed to the plaintiffs suggests a tort claim, and sufficiently meets the "unlawful conduct" necessary for the "unlawful act or a lawful act by unlawful means" criteria of a civil conspiracy claim. See Marshakv. Marshak, 226 Conn. 652 (1993), in which our Supreme Court implied that a tort claim relating to a child abduction would suffice for purposes of pleading civil conspiracy. In Marshak, the court dismissed the civil conspiracy count because the defendant at the time of the alleged conspiracy assisted a party who had joint custody of the children.
In this case, the plaintiffs essentially allege that CHPA conspired to keep secret the defective condition of a drug which they knew could cause stroke and death. Such an allegation of fraudulent concealment satisfies the second civil conspiracy requirement.
The motion to strike (#165) is denied.
ROBERT F. McWEENY, J.